Denise BENCE, et al.,
Plaintiffs-Appellants,

v.

DETROIT HEALTH CORPORATION, et al., Defendants-Appellees.

No. 81–1632.

United States Court of Appeals,
Sixth Circuit.

Argued March 14, 1983.

Decided July 11, 1983.

Rehearing and Rehearing En Banc
Denied Sept. 19, 1983.

---

Evelyn F. Forrest, James M. Radabaugh (argued), Troy, Mich., for plaintiffs-appellants.

Timothy Carroll (argued), Detroit, Mich., for defendants-appellees.

Before ENGEL, Circuit Judge, WEICK, Senior Circuit Judge, and BALLANTINE, U.S. District Judge.*

WEICK, Senior Circuit Judge.

Plaintiffs-Appellants Denise Bence, et al., have appealed to this court from a judgment in the United States District Court for the Eastern District of Michigan, Southern Division, in favor of their employer, Detroit Health Corporation, defendant-appellee in their action, asserting a claim for violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1). Jurisdiction was based on 28 U.S.C. § 1331. For the reasons hereinafter stated, we reverse.

Plaintiffs-Appellants ("employees") are former employees of Detroit Health Corporation ("employer"). At all relevant times employer operated a chain of health spas, each of which was divided into a men's division and a women's division which operated on alternate days. Men operated the

---

* The Honorable Thomas A. Ballantine, Jr., United States District Judge for the Western District of Kentucky, sitting by designation.

men's division and women operated the women's division. Employer's managers and assistant managers were paid, except for a six month period in 1975, by commissions based on gross sales of memberships. Male managers were paid 7.5% of the individual spa's gross sales of memberships to men. Female managers were paid 5% of gross sales of memberships to women. Male assistant managers received 4.5% of gross sales to men. Female assistant managers received 3% of gross sales to women.

Over the course of employer's life, the gross volume of membership sales to women was 50% higher than the gross volume of membership sales to men.[1] There was no difference in the job descriptions of male and female managers or assistant managers and they performed their jobs under similar working conditions. The total remuneration received by males and females was substantially equal although the females made more sales than the males.

Employees filed suit, contending that the different commission rates violated 29 U.S.C. § 206(d)(1), which provides:

No employer having employees subject to any provision of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to the employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production, or (iv)

a differential based on any other factor other than sex[.]

The employer contended that it did not violate this section because it paid different commission rates so that men and women would be paid substantially equal compensation for equal work performed.

The district court found the differential in commission rates established a prima facie case of wage discrimination and shifted to employer the burden to justify the differential. After analyzing the meaning of "wages" and "wage rate", the court found that § 206(d) focuses on equal wage rates and rejected employer's argument that the differential was justified because total remuneration was substantially equal. The court found, however, that "it is easier to sell memberships to women than to men" and that this brings employer within exception (iv) to § 206(d). The district court granted summary judgment for employer and employees appealed. This court held that material issues of fact existed with respect to the claim of justification and summary judgment improperly resolved a disputed issue of material fact, and remanded for further findings of fact and conclusions of law. 657 F.2d 266 (6th Cir.1981).

Upon remand, the district court conducted a bench trial at which the parties agreed that employees established their prima facie case and directed proofs toward employer's defense. The district court found:

[D]efendants are engaged in a business in which there are more potential female customers than male and in which history has demonstrated conclusively that the membership breakdown will be sixty percent female and forty percent male. In short, defendants have shown by a preponderance of the evidence that a male manager and a female manager, sitting

---

1. For reasons not relevant to this case, this ratio changed during the last six months of 1975 so that the number of memberships sold to men and women were equal. During that time male managers received a salary of $1,000 per month plus 3% of gross sales of memberships to men, female managers received a salary of $1,000 per month plus 2% of gross sales of memberships to women, male assistant managers received a salary of $600 per month plus 1.5% of gross sales of memberships to men, and female assistant managers received a salary of $600 per month plus 1% of gross sales of memberships to women (Appendix 283).

at the same desk in the same spa and expending the same amount of effort, under totally equal conditions, will have a net sales result of six membership sales to females and four membership sales to men. This is not to suggest that on a one-to-one basis a sale to a potential woman customer is any easier than a sale to a male customer. To the degree that this court's opinion on the summary judgment motion referenced easier sales to women, it was not intended to be a qualitative analysis but a quantitative one. There are simply more potential female customers in a consistent ratio of 60/40 and, with the same expenditure of effort, male and female managers will produce sales figures resulting in a 60/40 female/male membership. The net result of this is that, since the commission rates of seven and one-half percent for men and five percent for females are pegged to this same ratio, female and male managers at the same location will make, for all practical purposes, the same salary. To the degree that there are differentials, as many times as not the female manager will make more money than her male counterpart. The defendants have thus, based upon figures that have been conclusively proved to be historically accurate, seized upon a system for equalizing pay rather than having established a system which is discriminatory in a manner violative of the Equal Pay Act. It is understandable that a woman manager would feel that she has an argument for making more money than her male counterpart. This would be true if the commission system were thrown out and managers were paid identical salaries. Undoubtedly, the female managers would point to the fact that they are generating more memberships than their male counterparts as an argument in support of a larger salary. The Equal Pay Act, however, only commands equal pay for equal work. It does not command an employer to give absolute numerical recognition to

the balance-sheet significance of the equal work efforts of male and female employees. (Appendix 19–20)

The court concluded that employer's commission system was protected by exception (iii) and/or (iv) to § 206(d) and entered judgment accordingly.

## I.

Employees appeal from the foregoing judgment. Both parties advance the same arguments they presented to the district court. Employer admitted at oral argument that there was no difference between the memberships its employees sold to men and women. In this posture, this case presents two issues: (1) whether employer did not violate § 206(d)(1) because its commission differential provided male and female employees with substantially equal total remuneration; (2) whether employer's commission differential is protected by one or more of the four exceptions to § 206(d)(1).

■ Employer's "equal total remuneration" argument fails. Inequality of pay is an element of an equal pay plaintiff's prima facie case. *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974); *see generally* Sullivan, The Equal Pay Act of 1963: Making and Breaking a Prima Facie Case, 31 *Ark.L.Rev.* 545, 547–83 (1978). Employer conceded, and the district court properly found, that employees established their prima facie case. Section 206(d)(1) commands an equal *rate* of pay for equal work. Comparison of pay rates entails measuring the amount of pay against a common denominator, typically a given time period or quantity or quality of output.[2] Consequently, it is necessary to identify the proper factor by which to measure rate of pay. This must be a practical inquiry which looks to the nature of the services for which an employer in fact compensates an employee.

Under certain circumstances, there might be merit in employer's "equal total remu-

**2.** The Wage and Hour Division of the Department of Labor considers the term wage "rate" used in § 206(d)(1) to encompass "all rates of wages whether calculated on a time, piece, job, incentive or other basis." 29 C.F.R. § 800.111 (1982).

neration" argument if it paid its employees on the basis of hours spent in its health clubs or for satisfactory performance of a host of specified duties, of which selling memberships was merely one element. Under such a system, total compensation would be based on total service to employer's clientele. This could entail equal "skill, effort, and ... responsibility" despite the fact that female employees work harder selling memberships because potential female health club members outnumber potential male members.

That is not the case here. The record contains some evidence to support the conclusion that employees were more than glorified membership sellers. The job description for Manager and Assistant Manager stated that they were "completely responsible for the entire job operation," including personnel and bookkeeping functions (Appendix 260). They were also responsible for the duties of Instructors and Assistant Manager Trainees, who kept records, instructed and assisted spa members, and supervised cleaning personnel (Appendix 257–59).

There is far more evidence that employees' primary function was to sell memberships. Employer's job description stated that the progress and compensation of all its employees was "controlled by [their] 'PRODUCTION'," meaning "sales effectiveness" (Appendix 257). The specific job description for each grade of employee focused heavily on sales (Appendix 257–60). The record contains uncontradicted testimony that employer routinely fired managers who failed to meet its sales "goals" (Appendix 230–31). This evidence led the district court to find:

> [T]he life blood of the spa industry is the continued sale of memberships. It is for this reason that managers are compensated entirely on a commission basis. Al-

though managers do have supervisory responsibilities for their spa employees, it is clear that they are instructed and fully realize that their primary responsibility is for the continued sale of memberships. Top management closely monitors the sale efforts of each spa location and, in the event that there is any significant statistical departure from what history has demonstrated should be the sales results, it is a red flag to management that something is amiss at that particular location.

(Appendix 20). This court accepts this finding and concludes that employees were paid solely on the basis of memberships sold rather than overall service rendered to employer.

Evaluation of employer's compensation on a "per sale" basis makes it apparent that it paid female managerial personnel at a lower rate than their male counterparts. This is precisely what the Equal Pay Act forbids.[3] Since employer does not otherwise contest employee's prima facie case, it can escape liability only if its discriminatory commission system is protected by one or more of the four exceptions to § 206(d)(1).

## II.

Sexually discriminatory compensation does not violate § 206(d)(1) if "payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex [.]" The district court concluded that employer's wage differential was justified under exception (iii) because earnings were tied to membership sales, or under (iv) because a difference in the size of the markets for male and female health club members is a "factor other than sex" within the meaning of the Equal Pay Act. We disagree.

---

**3.** Employer's reliance on *Bullock v. Pizza Hut, Inc.,* 429 F.Supp. 424 (M.D.La.1977), is misplaced. In that case, the court found the defendant unlawfully discriminated against a female restaurant manager by paying her a lower base salary than males received, even though her salary plus bonus was equal to or greater than that paid to male managers. The court rejected a challenge to the defendant's bonus system because it was based solely on profit and loss statements; it did not hold that equal total remuneration precludes an Equal Pay Act violation.

## A.

The following general principles govern application of the exceptions to § 206(d)(1). The Equal Pay Act was intended as a "broad charter of women's rights in the economic field. It sought to overcome the age-old belief in women's inferiority and to eliminate the depressing effects on living standards of reduced wages for female workers and the economic and social consequences which flow from it." *Shultz v. American Can Company—Dixie Products,* 424 F.2d 356, 360 (8th Cir. 1970). The Act should be construed and applied to achieve this broad remedial purpose. *Corning Glass Works v. Brennan, supra,* 417 U.S. at 208, 94 S.Ct. at 2234. Courts should not sanction practices which "would frustrate, not serve, Congress' ends." *Id.*

Exceptions (i) through (iii) are specific examples illustrating the "broad principle" set forth in exception (iv). *County of Washington v. Gunther,* 452 U.S. 161, 170–71 n. 11, 101 S.Ct. 2242, 2248–49, n. 11, 68 L.Ed.2d 751 (1981). All four exceptions are affirmative defenses which, in essence, "authorize" an employer to differentiate in pay between sexes. *Id.,* at 169, 101 S.Ct. at 2247. Once a plaintiff establishes a prima facie case under § 206(d)(1), the burden shifts to the employer to prove by a preponderance of the evidence that its compensation system is justified by one or more of the four exceptions. *Corning Glass Works v. Brennan, supra,* at 196–97, 94 S.Ct. at 2229. This burden is a "heavy one." *Equal Emp. Opportunity Com'n v. Whitin Machine Works, Inc.,* 635 F.2d 1095, 1098 (4th Cir. 1980); *Brennan v. Owensboro—Daviess County Hospital,* 523 F.2d 1013, 1031 (6th Cir.1975), *cert. denied,* 425 U.S. 973, 96 S.Ct. 2170, 48 L.Ed.2d 796 (1976). An employer cannot avail itself of any of the exceptions to § 206(d)(1) unless it proves that "the factor of sex provides no part of the basis for the wage differential." *Id.,* at 1031, *citing* 29 C.F.R. § 800.142 (1974).

## B.

We think it plain that employer's compensation system is not protected by exception (iii), which exempts "a system which measures earnings by quantity or quality of production." The "quantity" test refers to equal dollar per unit compensation rates. There is no discrimination if two employees receive the same pay rate, but one receives more total compensation because he or she produces more. In the instant case, women had to produce more to be paid the same as men. The "quality" test is not met because it was not easier to sell memberships to women than to men, and there was no difference between the memberships employer offered to men and women. Any other result would undermine the purpose of the Equal Pay Act by allowing employers to pay women lower incentive rates than men for the same work.

## C.

A troublesome aspect in this case is whether employer's commission differential is a "factor other than sex" within the meaning of exception (iv). The issue is whether the phrase "any other factor other than sex" means literally *any* other factor, a factor traditionally used in job evaluation systems, or something else. The legislative history of the Equal Pay Act suggests Congress intended exception (iv) to include factors other than traditional job evaluation criteria. Referring to § 206(d)(1)(i) through (iv), the committee report on an Equal Pay Act precursor (H.R. 6060) stated:

Three specific exceptions and one broad general exception are also listed. It is the intent of this committee that any discrimination based upon any of these exceptions shall be exempted from the operation of this statute. As it is impossible to list each and every exception, the broad general exclusion has been also included. Thus, among other things, shift differentials, restrictions on or differences based on time of day worked, hours of work, lifting or moving heavy objects, differences based on experience, training, or ability would also be excluded. It also recognizes certain special circumstances, such as "red circle rates." This term is

borrowed from War Labor Board parlance and describes certain unusual, higher than normal wage rates which are maintained for many valid reasons. For instance, it is not uncommon for an employer who must reduce help in a skilled job to transfer employees to other less demanding jobs but to continue to pay them a premium rate in order to have them available when they are again needed for their former jobs.

H.R.Rep. 309, 88th Cong., 1st Sess. 3, *reprinted in* Staff of House Comm. on Education & Labor, Legislative History of the Equal Pay Act of 1963, 88th Cong., 1st Sess. 44 (1963). During debate in the House, Rep. Griffin observed:

I should like to focus the attention of the gentlemen upon small roman numeral iv ... which makes clear and explicitly states that a differential based on any factor or factors other than sex would not violate this legislation. In other words, even though jobs involve the same skill, equal effort, equal responsibility, and are performed under the same working conditions, if there is any other factor not based on sex upon which a differential is based, then no violation of this law can be found. Roman numeral iv is a broad principle, and those preceding it are really examples: such factors as a seniority system, a merit system, or a system which measures earnings on the basis of quality or quantity of production. The other body saw fit to leave out references in the bill to a merit system, a system which measures earnings on the basis of quality, and quantity, and a seniority system, and included only the broad language found in roman numeral iv of our bill. However, it should be clear that under either bill a wage differential based upon any factor other than sex is not a violation.

109 Cong.Rec. 9203 (1963). *See also* 109 Cong.Rec. 9198 (1963) (remarks of Rep. Thompson); *Id.* 9206 (remarks of Rep. Goodell).

Few courts have addressed this problem explicitly. Employer relies on *Hodgson v. Robert Hall Clothes, Inc.,* 473 F.2d 589 (3d Cir.), *cert. denied,* 414 U.S. 866, 94 S.Ct. 50, 38 L.Ed.2d 85 (1973), for the proposition that exception (iv) is not restricted to factors traditionally included in job-evaluation systems, but encompasses any non-sexual factor pertinent to an employer's business judgment on how to run its business. In that case, an employer maintained separate men's and women's clothing departments staffed by salesmen and saleswomen respectively. The men's department produced more profit than the women's department because men's clothing was more expensive and had a higher markup than women's clothing. The employer contended that intimate contact between sales clerks and customers made it necessary to segregate male and female clerks, and that higher profit in the men's department justified its practice of paying higher incentive wages to salesmen than to saleswomen. Based on the foregoing legislative history, the court agreed on both counts. The holding of *Robert Hall* is that "economic benefit" may be a "factor other than sex" within the meaning of exception (iv). Read broadly, *Robert Hall* may stand for the proposition that any non-sexual factor based on an employer's legitimate business judgment may be a "factor other than sex" within the meaning of exception (iv).

In *County of Washington v. Gunther,* supra, 452 U.S. at 170–71 n. 11, 101 S.Ct. at 2248–49 n. 11, the Supreme Court observed that Congress added exception (iv) "because of a concern that bona fide job evaluation systems used by American businesses would otherwise be disrupted" by the Equal Pay Act. Two courts have interpreted this as limiting exception (iv) to factors traditionally included in job-evaluation schemes. *Schulte v. Wilson Industries, Inc.,* 547 F.Supp. 324, 339 n. 16 (S.D.Tex.1982); *Kouba v. Allstate Insurance Co.,* 523 F.Supp. 148, 161 (E.D.Cal.1981), *rev'd,* 691 F.2d 873 (9th Cir.1982). In *Kouba,* the Ninth Circuit rejected this conclusion and adopted the *Robert Hall* "legitimate business reason" test for the scope of exception (iv). *Id.,* at 867–77.

In the instant case, employer seeks to bring itself within the *Robert Hall* rule. It argues that a legitimate business policy of providing male and female employees equal total remuneration justifies a commission differential because the market for women's memberships is larger than the market for men's memberships. Employer cannot avail itself of the *Robert Hall* "economic benefit" rule because women managers provided *more* profit than their male counterparts, not less. *Equal Emp. Opportunity Com'n v. Hay Associates,* 545 F.Supp. 1064, 1084 (E.D.Pa.1982). Moreover, unlike *Robert Hall,* in the instant case there is no difference between the product sold by male and female employees.

We do not deem it necessary to decide whether a difference in the size of markets for men's and women's memberships alone justifies employer's commission differential. Without passing on the propriety of segregating male and female employees into men's and women's departments, we believe that such segregation *plus* application of a lower commission rate *only* to those who sold memberships to women effectively locked female employees, and only female employees, into an inferior position regardless of their effort or productivity.[4] Since the lower commission rate could apply only to women, we do not believe employer has proved that "sex provided no part of the basis for the wage differential." *Brennan v. Owensboro—Daviess County Hospital, supra,* at 1031. *Cf.* 29 C.F.R. § 800.116(e) (1982) (commission differential between departments acceptable if potentially applicable to men and women).

■ Today's holding is a narrow one. We do not hold that an employer may not under any circumstances segregate male and female employees into separate departments and pay them different rates of wages. Nor do we endorse or reject the broad reading of § 206(d)(1)(iv) set forth in *Robert Hall* and *Kouba.* Those are ques-

tions for another day. We hold only that an employer may not avail itself of the affirmative defense under § 206(d)(1)(iv) where it compensates male and female employees solely for selling the exact same product, only female employees can be compensated at a lower commission rate, and the differential is not justified by any difference in economic benefit to the employer. Under the facts of this case, this result is necessary to effectuate the broad remedial purpose of the Equal Pay Act.

Accordingly, the judgment below is reversed and this case is remanded to the district court for further proceedings in conformity with this opinion.

ENGEL, Circuit Judge, dissenting in part and concurring in part.

I agree with the majority that the compensation system here does not come within exception (iii) of the Equal Pay Act ("the Act"), which exempts "a system which measures earnings by quantity or quality of production." 29 U.S.C. § 206(d)(1)(iii). To the extent the trial court relied upon this exception, it was in error. Further, the parties stipulated before trial that the sole remaining issue to be decided was the application of exception (iv), relating to "a differential based on any other factor than sex." 29 U.S.C. § 206(d)(1)(iv). I also agree with the majority's conclusion that the employer's "equal total remuneration argument" must fail. A deliberate differential in commission rate according to sex cannot be justified by a desire to equalize remuneration between the sexes although, as the majority points out, there could conceivably be some circumstances, not present here, in which such a result would not offend the Equal Pay Act. Since the trial court placed primary reliance upon this theory, it follows that the judgment based thereon must be vacated.

---

**4.** Maintenance of a commission differential when the traditional 60/40 ratio of membership sales to women and men broke down in 1975 renders suspect employer's claimed goal of compensating its male and female managerial

employees equally. This fact alone may not prove employer had an evil motive, but it does undermine the contention that the commission differential was designed solely to offset the 60/40 sales ratio.

If the different commission rates paid by Detroit Health are based on the sex of the employee, they are in violation of the Act. If, however, the different commission rates paid by Detroit Health are based upon the sex of the health club member, this could quite readily be a "factor other than sex" under the Act, for the Act speaks to the sex of the employee and not to the sex of the customer.

Stipulation 16, entered into between the parties and hence binding upon the trial court and us, provides:

> 16. At all material times, the volume of gross sales to females was consistently higher than gross sales to males, for the spas of Detroit Health. While there are variances from month to month, when measured over representative periods of time, the ratio of gross sales to females to gross sales to males is 60/40.

In other words, there is solid evidence here that the market for men's memberships is distinctly different from that for women's memberships. As noted by the majority opinion and the trial judge, health spas generally, and those operated by Detroit Health Corporation in particular, attract about 50% more female customers than male customers. This disparity in business is bound to affect the operation of a health club business in a number of ways, and could quite easily evoke different economic responses. The difference in the markets for male and female memberships could be regarded as a factor "other . . . than sex" under exception (iv) of the Act.

Differences in the profitability of men's and women's divisions were held to justify differing commission rates for male and female salespersons in *Hodgson v. Robert Hall Clothes, Inc.*, 473 F.2d 589 (3d Cir.), cert. denied, 414 U.S. 866, 94 S.Ct. 50, 38 L.Ed.2d 85 (1973). *Robert Hall* would be more appropriately applied here, of course, if the female employees' rate were *higher* than the male employees' rate. Paying a higher commission rate for sales to men than for sales to women could, however, be justified by the market generally and by other economic and business considerations.

Commission rates normally vary according to the type of market in which products or services are sold. If there were no sex discrimination in the selection of salespersons, different commission rates for women's applications, men's applications, or for applications of children, handicapped persons, golden agers, or veterans would be acceptable. Normally, employers pay commissions at a rate which they perceive will provide sufficient incentive to their sales staff and also provide enough income to retain sales personnel in their positions. If both male and female employees acted as managers or assistant managers on any given day without regard to the sex of the customers, there might be some grumbling at the different rates based upon this factor, but there would be no violation of the Equal Pay Act.

The trouble with such an analysis here is two-fold. Stipulation 3, also entered into between the parties, provides:

> 3. Detroit Health owns and operates a chain of health spas. Operationally, each spa is divided into a male division and a female division, with one division operating the spa on Monday, Wednesday and Friday and the other on Tuesday, Thursday and Saturday. (The determination of which division operates on which set of days varies from spa to spa.) The male division is operated by male managerial personnel and male instructors, attracting and servicing male members and guests. Conversely, the female division is operated by female managerial personnel and female instructors, attracting and servicing female members and guests.[1]

[1] There is no allegation that the use of exclusively males to attract and service males and exclusively females to attract and service females is in any way unlawful.

Therefore, the most obvious discrimination between male and female employees—that reflected in footnote 1 of Stipulation 3—was deliberately not complained of in this case; in fact, the parties expressly agreed that this discrimination was not unlawful. It is this circumstance which makes this case so difficult to analyze properly. The second difficulty is that the record contains

evidence that the commission rates employed here were based not upon the sex of the customer but were in fact based upon the sex of the employee.

The principal witness for the company was James P. Hoppin, vice-president of Detroit Health Corporation since 1974. Mr. Hoppin was questioned at trial concerning the commission rate paid for walk-ins of one sex who purchase memberships from a manager or assistant manager of the other sex:

> THE COURT: How are walk-ins handled on those days? Somebody not being aware of the fact that that day is allocated, and just wants to walk in and join, perhaps they have seen one of your ads, how is a female walk-in handled on a male day and a male walk-in handled on a female day?

> THE WITNESS: A couple of different ways. First of all, they could make an appointment for the next day. If they are there specifically to buy a membership, they would do that. There is an appointment book there for that.

> THE COURT: If a male manager sold a female membership, does he get credit for it?

> THE WITNESS: We would split the dial [sic, deal], which means he would get half for writing it and it would be left for the ladies the next day, and they would get half of it.

> THE COURT: So that commission then would be divided among the parties?

> THE WITNESS: That's right.

\* \* \* \* \* \*

### REDIRECT EXAMINATION

BY MR. CARROLL:

Q Do these walk-ins comprise a significant part of your sales activity?

A Absolutely not.

\* \* \* \* \* \*

### RECROSS-EXAMINATION

BY MR. RADABAUGH:

Q Mr. Hoppin, I am trying to understand that in terms of the commission system. If you have a walk-in on a woman's day, the walk-in is a male, and the women sells the male a membership, essentially enrolls him in your health spa—

A (Interposing.) Yes?

Q (Continuing)—what happens to the commission?

A It's split in half.

Q O.K. And in terms of being split in half, what commission rate are you splitting in half?

A We are splitting the gross in half.

Q So that if a membership costs $4 hundred, you would credit $2 hundred of the $4 hundred to the male division and $2 hundred to the female division, and then you would apply the respective percentage rates to the $2 hundred?

A That is correct.

Q So if a woman sold—enrolled a man on a woman's day, that women would get, if she was a manager, 5-percent of $2 hundred, is that correct?

A Under your example, correct.

Q Is that $10?

A That is correct.

Q And using the same application, the male manager, under my analogy, would get $15; is that correct?

A That is correct.

Q Now, reversing that example, if a woman came in and enrolled herself as a member on a male day, would there be a reverse situation?

A It would be treated the same way; the commission would be split.

Q The application of the system would be the same, is that correct.

A That is correct.

The record contains similar testimony from employees. Such testimony does not appear to have been weighed by the trial judge. In my opinion, it could compel a conclusion that the different commission rates paid by Detroit Health Corporation are violative of the Equal Pay Act because they are based on the sex of the employee and not upon the sex of the customer. The only aspect of this case which makes me hesitate is the testimony of Mr. Hoppin that

such sales—*i.e.,* to walk-ins—"absolutely [do] not" comprise a significant part of the business. If, therefore, such evidence is *de minimis,* the trial judge might have justifiably relied upon other evidence in the record which he found more persuasive. Because this is essentially a matter of weighing the evidence and applying the appropriate law, I would remand for reconsideration of the evidence by the trial judge in light of the concerns expressed in these opinions.