846 F.2d 70
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,
v.
KETTLER BROTHERS INC., Defendant-Appellee.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellee,
v.
KETTLER BROTHERS INC., Defendant-Appellant.
 Nos. 87-3069, 87-3083.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 2, 1988.
Decided April 27, 1988.
 
 Douglas Arthur Gallegos, Trial Attorney, Equal Employment Opportunity Commission (Charles A. Shanor, General Counsel, Gwendolyn Young Reams, Associate General Counsel, Gerald S. Kiel, Regional Attorney, Donald R. Stacy, Supervisory Trial Attorney on brief) for appellant.
 Douglas Bennett Mishkin (Paul B. Bran on brief) for appellee.
 Before WILKINSON, Circuit Judge, BUTZNER, Senior Circuit Judge, and THOMAS SELBY ELLIS, III, United States District Judge for the Eastern District of Virginia, sitting by designation.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 The Equal Employment Opportunity Commission appeals the district court's order granting a motion for summary judgment in favor of Kettler Brothers, Inc. (Kettler). The district court held that Kettler did not violate Title VII of the Civil Rights Act of 1964 or willfully violate the Equal Pay Act of 1963 with respect to the compensation it paid its women sales managers. Because critical issues of fact remain in dispute, we reverse the district court's order granting summary judgment and remand the case for trial. We affirm the district court's order denying Kettler's motion for attorneys' fees.
 
 
 2
 * Kettler builds and sells homes and town houses in metropolitan Washington, D.C. It employed eight sales managers in 1982 and 1983. Five were women and three were men. Kettler guaranteed a minimum salary to each sales manager plus a commission for each house that he or she sold. On July 31, 1984, Nancy Andrus, one of the women sales managers, filed a complaint with the EEOC charging that Kettler violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., and the Equal Pay Act of 1963, 29 U.S.C. Sec. 206(d), by paying her less than it paid its male sales managers for equal work. In her complaint, she alleged that when she complained to Donald D. DeLisi, vice president for sales, about Kettler's commission rate system he informed her that the men received higher commissions because they had families to support. The EEOC filed suit against Kettler on January 10, 1986, alleging that it violated Title VII and the EPA by paying lower commissions to its women sales managers.*
 
 
 3
 The district court granted summary judgment for Kettler on both the Title VII and EPA claims. It held that the difference in commission rates was not dispositive and that a comparison of gross earnings showed no disparate treatment. With reference to the compensation paid in 1982 and 1983, the only years at issue on appeal, the court said:
 
 
 4
 Males and females were distributed fairly evenly throughout the range of gross earnings with the exception of Gall [a male] who had an exceptional year in 1983, earning approximately $45,000.00 more than the sales manager who earned the second highest amount. However, rather than viewing this as evidence of disparate treatment, it seems a more plausible explanation that Gall is an exceptional sales manager who had higher gross earnings than others in 1983 because of his extraordinary sales abilities.
 
 
 5
 The court also held that inasmuch as Kettler attempted to assure each sales manager income of at least $35,000 a year, its method of assigning commission rates, though unsuccessful, was not based on sex.
 
 II
 
 6
 To establish a prima facie EPA claim, EEOC must show that Kettler paid its women sales managers at a rate less than the rate at which it paid men. 29 U.S.C. Sec. 206(d)(1); Corning Glass Works v. Brennan, 417 U.S. 188 (1974). The Secretary of Labor has defined wage "rate" as follows: "The term wage 'rate,' as used in the EPA, refers to the standard or measure by which an employee's wage is determined and is considered to encompass all rates of wages whether calculated on a time, commission, piece, job incentive, profit sharing, bonus, or other basis." 29 C.F.R. Sec. 1620.12 (1987). Kettler may rebut the EEOC's claim by showing that payment is based upon either "a system which measures earnings by quantity or quality of production" or is "a differential based on any other factor other than sex." 29 U.S.C. Sec. 206(d)(1).
 
 
 7
 To establish a prima facie Title VII claim, EEOC must show that Kettler treated the women sales managers less favorably than men with respect to compensation because of their sex and that Kettler acted with discriminatory intent. 42 U.S.C. Sec. 2000e-2(a)(1); Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977). If EEOC establishes both elements of its cause of action, Kettler can rebut by articulating a legitimate, nondiscriminatory reason for its actions that is not a pretext. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Kettler may also rebut EEOC's claim by relying on the affirmative defenses set forth in the EPA. 42 U.S.C. Sec. 2000e-2(h); 29 U.S.C. Sec. 206(d)(1); County of Washington v. Gunther, 452 U.S. 161, 167 (1981).
 
 
 8
 The statute of limitations for the EPA claim starts to run two years prior to the time EEOC filed this action on January 10, 1986. If, however, the violation of the Act was willful, the statute of limitations is three years. 29 U.S.C. Sec. 255(a). A violation is willful when an employer
 
 
 9
 is cognizant of an appreciable possibility that he may be subject to the statutory requirements and fails to take steps reasonably calculated to resolve the doubt.... [T]he same conclusion follows when an equally aware employer consciously and voluntarily charts a course which turns out to be wrong.
 
 
 10
 See Laffey v. Northwest Airlines, Inc., 567 F.2d 429, 462 (D.C.Cir.1976).
 
 
 11
 The statute of limitations for the Title VII claim starts to run two years prior to the time Andrus filed her complaint with the EEOC on July 31, 1984. 42 U.S.C. Sec. 2000e-5(g).
 
 
 12
 On January 1, 1984, Kettler adopted a uniform commission rate for all of its sales managers--men and women. The district court found no discrimination with respect to compensation based on the uniform rate, and the EEOC does not contest this ruling. Therefore, unless the violation of the EPA was willful there can be no recovery under this Act because there is no claim of inequality in 1984 and 1985. If the violation was willful, recovery is limited to the period from January 1, 1983, to December 31, 1983. Any recovery under the Title VII claim is limited to the period from July 31, 1982, to December 31, 1983.
 
 
 13
 The record discloses that in 1982 and 1983 Kettler paid two men 1% commissions for a majority of their sales, but it paid five women and one man less than 1% for a majority of their sales. When the commission rates are weighted by the number of sales at each commission rate, the weighted average commission rate for men in 1982 was .94% and for women .76%. In 1983, the weighted average for men was .94% and for women .88%.
 
 
 14
 In 1982, Kettler not only paid two men a higher commission rate than it paid women on a majority of their sales, but the men also earned more. Gall earned $51,876.32, and McKenna earned $45,193.95. Andrus, the highest paid woman among the women sales managers, earned $38,225.42. In 1983, Gall earned $99,609.53. The highest paid women, Padgett, earned $52,862.49, which topped the earnings of the other two men who were paid $50,285.98 and $45,400.54. But to achieve her higher earnings, Padgett had to sell more houses at a lower commission rate than the men. Indeed, Gall's high earnings cannot be attributed altogether to his "extraordinary sales abilities" as the district court suggested. In both 1982 and 1983 two women sold more houses than Gall, but Gall was paid a 1% rate on every house he sold. The women did not enjoy this advantage.
 
 
 15
 Kettler admitted that the skill, effort, and responsibility of both men and women sales managers were the same. Nevertheless, the commission rates and gross compensation were unequal. The EEOC contends that the inequality between the commission rates and compensation for men and women resulted from Kettler's intentional discrimination in favor of the men and against the women. In support of this contention it presented affidavits from three women that the vice president in charge of sales told them that the men received higher commissions than the women because the men had families to support.
 
 
 16
 In Bence v. Detroit Health Corp., 712 F.2d 1024 (6th Cir.1983), women were paid a lower commission rate than men but earned as much because they made more sales than men. The court held that this established a prima facie violation of the EPA, saying:
 
 
 17
 Evaluation of employer's compensation on a 'per sale' basis makes it apparent that it paid female managerial personnel at a lower rate than their male counterparts. This is precisely what the Equal Pay Act forbids. Since employer does not otherwise contest employee's prima facie case, it can escape liability only if its discriminatory commission system is protected by one or more of the four exceptions to Sec. 206(d)(1).
 
 
 18
 712 F.2d at 1028. Applying the principle expressed in Bence, we conclude that if the evidence pertaining to commission rates and compensation is in accord with the record on summary judgment, the EEOC has proved prima facie violations of Title VII and the EPA.
 
 
 19
 If EEOC's evidence that the men were paid more than the women because the men had families to support is credible, it is relevant to the issues raised by Kettler's defense and whether Kettler's discrimination was intentional and willful. The EEOC's allegations about Kettler's motive, if proved, illustrate the perception of male dominance in the work place that Congress sought to remedy. In Corning Glass Works, 417 U.S. at 195, the Court called attention to this purpose of the EPA:
 
 
 20
 Congress' purpose in enacting the Equal Pay Act was to remedy what was perceived to be a serious and endemic problem of employment discrimination in private industry--the fact that the wage structure of 'many segments of American industry has been based on an ancient but outmoded belief that a man, because of his role in society, should be paid more than a woman even though his duties are the same.' S.Rep. No. 176, 88th Cong., 1st Sess., 1 (1963). The solution adopted was quite simple in principle: to require that 'equal work will be rewarded by equal wages.'
 
 
 21
 It is apparent that there is a genuine issue of material fact with regard to Kettler's reasons for the commission rates it assigned and the compensation it paid in 1982 and 1983. Summary judgment therefore was inappropriate. EEOC's claim warrants a trial at which credibility can be assessed. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-52 (1986).
 
 
 22
 On remand, the district court should permit the EEOC to present evidence that Kettler Brothers assigned lower commission rates to its women sales managers on a consistent basis since 1979. While it is true that the EEOC cannot recover any damages for Title VII and EPA violations that occurred outside of the reach of the applicable statutes of limitation, the evidence is relevant to prove intentional, willful violations within the period that is not barred by the applicable statutes of limitation. See Bazemore v. Friday, 106 S.Ct. 3000, 3009-10 (1986); Hazelwood School District v. United States, 433 U.S. 299, 309-10 n. 15 (1977).
 
 
 23
 The district court's order denying Kettler's motion for attorneys' fees is affirmed. The order granting summary judgment is vacated, and the case is remanded for proceedings consistent with this opinion.
 
 
 
 *
 On appeal, the EEOC withdrew allegations that Kettler violated Title VII and the EPA by assigning women to less desirable subdivisions and by granting them less latitude to negotiate sales contracts than it granted to men