[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-13239

Non-Argument Calendar

_____

CASSANDRA M. PRUITT,

Plaintiff-Appellant,

*versus*

UNIVERSAL PROTECTION SERVICE, LLC,
f.k.a. Allied Universal Security Services,
KRISTEN ARGUS,

Defendants-Appellees.

———————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-01884-JPB

———————————

Before JORDAN, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Cassandra Pruitt appeals the district court's order granting summary judgment to Universal Protection Service, LLC, formerly known as Allied Universal Security Services ("Allied"), and Kristen Argus on her claims of (1) unequal pay under the Equal Pay Act ("EPA") against Allied and Argus, in violation of 29 U.S.C. § 206(d); (2) sex-based wage discrimination against Allied under Title VII of the Civil Rights Act of 1964 ("Title VII"), in violation of 42 U.S.C. § 2000e-2(a); and (3) retaliation under Title VII against Allied, in violation of 42 U.S.C. § 2000e-3(a).

**I**

Allied contracted with Atlanta Medical Center ("AMC") to provide security services at various AMC hospitals. AMC is owned by Wellstar.

In February of 2015, Allied hired Ms. Pruitt as a security manager for AMC under Director Richard Westgate. Ms. Pruitt primarily managed the operations for security officers' shifts, did scheduling and training, conducted investigations, documented

incidents and activities, and processed payroll. Ms. Pruitt was primarily responsible for the security management at AMC-Main exclusively. Ms. Pruitt would occasionally go to the AMC-South hospital one or two times a month at Mr. Westgate's behest.

Ms. Pruitt's day-to-day responsibilities as the security manager of AMC-Main all related to the management of the security services provided by Allied to AMC-Main. AMC-South was managed by a separate security manager during all times relevant to this appeal, first by Tyrone Jacobs and subsequently by Robert Stevens.

Soon after Ms. Pruitt was hired, Mr. Westgate was demoted, and his position was eliminated. Ms. Pruitt took on some additional responsibilities and duties relating to AMC-Main's security, but she, and other security managers, did not receive any responsibilities relating to emergency management. Instead, emergency management responsibilities were handled at various times by Michael Dunning, Jamey Moore, and Mr. Westgate. Ms. Pruitt complained to her supervisor, Kristen Argus, that even though she had increased responsibilities after Mr. Westgate was demoted, she had not received additional compensation. She also complained that, despite receiving a higher salary, she was being paid at a lower rate than Mr. Jacobs and Mr. Stevens.

On April 16, 2019, Ms. Pruitt submitted a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") complaining of sex discrimination and unequal pay. Subsequent to Ms. Pruitt's EEOC complaint, Stuart Downs, the

Chief Operating Officer of Wellstar, became aware of a recording of a patient Ms. Pruitt produced while working at AMC-South, a violation of hospital policy. Mr. Downs requested Allied remove Ms. Pruitt from her position as security manager at AMC-South. On April 26, 2019, Allied complied with Mr. Downs' request and removed Ms. Pruitt from her position. After her removal, Ms. Pruitt filed a second EEOC charge alleging retaliation. Ms. Pruitt then filed the instant suit. This appeal comes as a result of the district court's order granting the motions for summary judgment filed by Allied and Ms. Argus.

Ms. Pruitt first argues that the district court erred when it granted summary judgment to Allied and Ms. Argus on the ground that she failed to establish a *prima facie* case under the EPA. Second, Ms. Pruitt argues that the district court similarly erred when it granted summary judgment on the ground that she failed to establish a *prima facie* case of wage-discrimination under Title VII. Finally, Ms. Pruitt argues that the district court erred when it granted summary judgment on the ground that she failed to establish a *prima facie* case of retaliation under Title VII.

## II

"We review a district court's grant of summary judgment *de novo*, applying the same legal standards applied by the district court." *Valley Drug Co. v. Geneva Pharms., Inc.*, 344 F.3d 1294, 1303 (11th Cir. 2003). A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). "We view the summary judgment record in the light most favorable to the non-moving party, and we draw all reasonable inferences in favor of the non-moving party." *Stanley v. City of Sanford, Fla.*, 83 F.4th 1333, 1337 (11th Cir. 2023).

### III

We first address Ms. Pruitt's challenge to the district court's conclusion that she failed to establish a *prima facie* case under the EPA. "The EPA prohibits wage discrimination on the basis of sex and 'forbids the specific practice of paying unequal wages for equal work to employees of the opposite sex.'" *Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1317 (11th Cir. 2024) (quoting *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1526 (11th Cir. 1992)).

> The analysis of an EPA claim follows a two-step framework. First, to establish a prima facie case a plaintiff must show "that an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." . . . Second, if an EPA plaintiff establishes a prima facie case, "the burden shifts to the employer to prove that the difference in pay is justified by one of the four exceptions in the Equal Pay Act."

*Id.* (internal quotation marks and citations omitted) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974); and *Brock v. Ga. Sw. Coll.*, 765 F.2d 1026, 1036 (11th Cir. 1985), *overruled on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)).

A plaintiff establishes a *prima facie* case under the EPA by comparing the jobs held by the female and male employees, and by showing those jobs are substantially equal, comparing only the skills and qualifications actually needed to perform the primary duties of each job. *See Miranda*, 975 F.2d at 1533. "The plaintiff need not prove that the job held by her male comparator is identical to hers; she must demonstrate only that the skill, effort and responsibility required in the performance of the jobs are 'substantially equal.'" *Id*. (quoting 29 U.S.C. § 206(d)(1)). "The standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high." *Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 799 (11th Cir. 1989) (finding that an insurance agent failed to raise a genuine factual issue that her comparators were substantially equal when she failed to rebut evidence that they were tasked with seven different important duties). *See also Terrell v. Ala. State Univ.*, 700 F.Supp.3d 1015, 1024 (M.D. Ala. 2023) (finding that a fellow employee was not a proper comparator in part because he only shared broad similarities between a small percentage of the comparator's job and the plaintiff's job).

Ms. Pruitt argues that the district court erred by granting summary judgment to Allied and Argus on her EPA claim because she established a *prima facie* case by showing that she was paid less than two distinct sets of male comparators: (1) previous Directors of Security and Emergency Management—Messrs. Westgate, Moore, and Dunning; and (2) male security managers at AMC-Main—Messrs. Jacobs and Stevens.

23-13239               Opinion of the Court                    7

As to the first set of comparators, Ms. Pruitt argues that she should be compared to Messrs. Westgate, Moore, and Dunning because she had what she claims to be similar emergency management duties and handled more than one hospital. The record contradicts her assertion. Ms. Pruitt maintains Mr. Westgate could not have had emergency management responsibilities because his predecessor, Mr. Moore, had already created all the emergency policies and procedures before Mr. Westgate's arrival and Mr. Moore had served as incident commander during the only two emergency incidents she is aware of. However, Ms. Pruitt makes no attempt to refute Allied's explanation that emergency management responsibilities encompass a wholly different set of tasks and responsibilities from those she identified, like ensuring emergency preparedness through evaluating and testing existing procedures and systems, managing PPE inventories, or being aware of and anticipating potential needs of emergencies at events in the area that the hospital may need to serve.

Security managers reported directly to the Director of Security and Emergency Management. The responsibilities of Messrs. Westgate, Moore, and Dunning were substantially different than Ms. Pruitt's because those individuals retained significant emergency management duties that Ms. Pruitt did not handle. Moreover, all three men managed at least two hospitals, while Ms. Pruitt was only ever primarily responsible for AMC-Main. Mr. Westgate testified that he spent 60 to 70 percent of his working time on emergency management when he held the title of Director of Security and Emergency Management. After Mr. Westgate was demoted to

Emergency Manager, he retained responsibility for all emergency management functions at both AMC-South and AMC-Main. Mr. Moore testified that his emergency management duties took 50 to 60 percent of his time, and his duties covered two hospital locations. Mr. Dunning also testified that emergency management duties took 60 to 65 percent of his time, and he covered four hospitals.

Ms. Pruitt alleged she picked up some of Mr. Westgate's former duties at AMC-Main, such as attending certain meetings, dealing with pay rates, and hiring and firing. Yet Mr. Westgate remained responsible for emergency management at all AMC properties after his demotion. Ms. Pruitt also alleged that she would occasionally travel to AMC-South once or twice per month to perform tasks Mr. Westgate was responsible for. But she failed to establish that any of the functions she identified constituted substantial or primary duties of her security manager role such that her role was "substantially equal" to that of any of the director comparators she offered. *See Miranda*, 975 F.2d at 1533. Even if Ms. Pruitt had occasional emergency management responsibilities, the fact that most of her responsibilities were exclusive to AMC-Main while each of the director comparators offered was responsible for more than one hospital is fatal to the comparison. Ms. Pruitt failed to meet the high standard of showing her job was "substantially equal" to those of Messrs. Westgate, Moore, and Dunning and could not establish a *prima facie* EPA claim by relying on them as comparators. *See Miranda*, 975 F.2d at 1533; *Waters*, 874 F.2d at 799.

23-13239                Opinion of the Court                9

The second set of comparators, Ms. Pruitt's male security manager counterparts at AMC-South, are also not appropriate comparators to establish a *prima facie* case under the EPA. Ms. Pruitt was always paid a higher salary than either of them. Even though Ms. Pruitt was paid more than both Messrs. Jacobs and Stevens, she argues that she was paid less than them because her pay rate was lower based on a difference that emerges when their respective salaries are divided by the total amount of hours of supervised security services that AMC had contracted for Allied to provide at the respective AMC hospital.

Ms. Pruitt relies on non-binding reasoning from the Sixth Circuit—*Bence v. Detroit Health Corp.*, 712 F.2d 1024, 1027–1028 (6th Cir. 1983) (finding that a plaintiff could state a *prima facie* case under the EPA despite receiving a higher total compensation than their comparators, if she was paid at a lower rate than their comparators). *Bence*, however, is distinguishable from the present case, and we decline Ms. Pruitt's invitation to apply its legal principle here. The plaintiff's pay in *Bence* was determined by commissions based on gross sales, whereas here Ms. Pruitt, Mr. Jacobs, and Mr. Stevens were all paid a flat salary. *See id*. at 1025-28. Ms. Pruitt offered no evidence that any other payment structures were used or that any security manager salaries were determined by reliance on the metric Ms. Pruitt suggests we rely on now. This substantially differs from the scenario in *Bence*, where part of the employees' compensation was calculated from a pay rate that was explicitly different based on the employee's gender. Ms. Pruitt's suggested denominator had no connection to how she or her comparators'

compensation was actually determined, unlike the denominator relied on in *Bence*. As a result, Ms. Pruitt failed to show she was ever paid less total compensation than Messrs. Jacobs or Stevens or that there was any difference in the calculation of those salaries by Allied such that Ms. Pruitt was paid at a different rate.

For the foregoing reasons, the district court did not err when it granted summary judgment to Allied and Argus on Ms. Pruitt's EPA claim because she failed to establish a *prima facie* case.

## IV

We now move to Ms. Pruitt's similar Title VII claim. Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).

We have held that the Supreme Court's decisions in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248 (1981), "provide 'the appropriate framework for evaluating [a] claim of gender-based wage discrimination' under Title VII." *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1018-19 (11th Cir. 1994) (alteration in original) (quoting *Miranda*, 975 F.2d at 1528). "Under the *McDonnell Douglas/Burdine* approach, a female Title VII plaintiff establishes a *prima facie* case of sex discrimination by showing that she occupies a job similar to that of higher paid males." *Id.* "Once a *prima facie* case is established, the defendant must articulate a 'legitimate, non-discriminatory reason for the pay disparity.'" *Id.* (quoting *Miranda*, 975 F.2d

at 1529). "Once such a justification is advanced, the plaintiff must demonstrate by a preponderance of the evidence that the employer had a discriminatory intent. In other words, the plaintiff must show that 'a discriminatory reason more likely than not motivated [the employer] to pay her less.'" *Id.* (alteration in original) (quoting *Miranda*, 975 F.2d at 1529).

"Title VII incorporates a more relaxed standard of similarity between male and female-occupied jobs, thus [a] plaintiff is not required to meet the exacting standard of substantial equality of positions set forth in the Equal Pay Act." *Miranda*, 975 F.2d at 1529 n.15. Nevertheless, even under a relaxed standard, we have held that employees held up by plaintiffs as comparators for purposes of establishing a *prima facie* case under Title VII must be "similarly situated in all material respects" to the plaintiff. *See Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1226 (11th Cir. 2019) (en banc). Under this standard, "[a] plaintiff needn't prove . . . that she and her comparators are identical save for their race or gender." *Id.* at 1227. Rather, "a plaintiff and her comparators must be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" *Id.* at 1228 (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 231 (2015)).

Ms. Pruitt argues that the district court erred by granting summary judgment to Allied on her Title VII wage-discrimination claim because she established a *prima facie* case by showing that she was paid less than male employees who were similarly situated to her in all material respects. However, we find that under Title VII's

more relaxed standard, Ms. Pruitt cannot establish a *prima facie* case.

As to the director comparators, Ms. Pruitt did not establish that Messrs. Westgate, Moore, and Dunning are "similarly situated in all material respects" to her responsibilities because her comparators all had substantial emergency management duties she never had. *See Lewis*, 918 F.3d at 1226. Messrs. Westgate, Moore, and Dunning also had primary duties covering multiple hospital locations, while Ms. Pruitt's primary duties related to only one hospital. The hours her comparators worked on emergency management duties, as well as their consistent responsibilities with respect to multiple hospital locations, sufficiently distinguishes their jobs from Ms. Pruitt's job to defeat her Title VII claim with respect to them. *See Young*, 575 U.S. at 231.

As to her second set of comparators, Ms. Pruitt does not assert any new arguments regarding Messrs. Jacobs and Stevens. As discussed above, she did not present any evidence that she was actually paid less than them: the record evidence shows that Ms. Pruitt in fact was paid a higher salary than the manager comparators she offers.

The district court did not err by granting summary judgment to Allied on Ms. Pruitt's Title VII wage-discrimination claim because she failed to establish a *prima facie* case.

## V

Finally, we address Ms. Pruitt's Title VII retaliation claim. Under Title VII, it is unlawful for an employer "to discriminate

against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

"A Title VII retaliation claim based on circumstantial evidence . . . is ordinarily analyzed under the . . . burden-shifting framework" stated in *McDonnell Douglas*. *See Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021). "Pursuant to that framework, the plaintiff first must establish a prima facie case of retaliation by showing that: (1) she engaged in statutorily protected conduct—that is, conduct protected by Title VII; (2) she suffered an adverse action; and (3) 'there is some causal relationship between the two events.'" *Id.* (quoting *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020)). "The burden then shifts to the employer to articulate a legitimate, nonretaliatory reason for the adverse action." *Id.* "Assuming the employer's burden is met, 'the burden shifts back to the plaintiff to establish that the reason offered by the [employer] was not the real basis for the decision, but a pretext' for retaliation." *Id.* (alteration in original) (quoting *Johnson*, 948 F.3d at 1325).

"We have explained that 'very close' temporal proximity between a protected activity and an adverse action can create an inference of causation." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1309 (11th Cir. 2023) (quoting *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)). However, "the intervening

discovery of employee misconduct can sever the causal inference created by close temporal proximity." *Id.* It is the causal chain necessary for the third element of a *prima facie* retaliation claim that is at issue here.

Ms. Pruitt argues that the district court erred by granting summary judgment to Allied on her Title VII retaliation claim because she established a *prima facie* case by submitting evidence establishing a close temporal proximity between her removal from AMC-Main and her EEOC complaint.  We disagree.

Ms. Pruitt established that she (1) engaged in statutorily protected conduct—her first EEOC claim she filed on April 16, 2019, and (2) that she suffered an adverse action—her removal from her position as security manager on April 26, 2019.  *See Tolar*, 997 F.3d at 1289.  But Ms. Pruitt failed to meet the third prong of the *McDonnell Douglas* framework because she did not establish that there is "some causal relationship" between her EEOC complaint and her removal.  *See Tolar*, 991 F.3d at 1289. Ms. Pruitt relied entirely on the temporal proximity of the adverse employment action and her EEOC complaint to establish the causal chain.  Although the causal connection can be established by temporal proximity, that same causal connection can be severed by the intervening discovery of misconduct.  *See Tolar*, 997 F.3d at 1289; *Berry*, 84 F.4th at 1309.  Despite the "very close" temporal proximity between the two events in this case, in the intervening period Allied was made aware that Ms. Pruitt violated an AMC-Main policy when she recorded a patient without consent.  It does not matter that the recording

occurred before she filed the EEOC complaint—the operative timing is when discovery of the misconduct occurs. *See Berry*, 84 F.4th at 1309. Here, Allied was made aware of the conduct by Mr. Downs only after Ms. Pruitt's EEOC complaint. Mr. Downs requested Ms. Pruitt's removal because of that discovery. Ms. Pruitt's allegation that another AMC employee instructed her to produce the recording in contravention of hospital policy does not change the analysis. Allied still only became aware of the alleged misconduct, as well as Mr. Downs' request that Ms. Pruitt be removed from AMC-Main, after her EEOC complaint had already been made. The intervening discovery of prior misconduct was sufficient to sever the causal chain where causation was unsupported by any evidence other than temporal proximity. *See Berry*, 84 F.4th at 1309. Without the essential causation element established, Ms. Pruitt did not establish a *prima facie* Title VII retaliation claim.

The district court did not err by granting summary judgment to Allied on Ms. Pruitt's Title VII retaliation claim because Ms. Pruitt failed to establish a *prima facie* case.

## VI

The district court's summary judgment order is affirmed.

**AFFIRMED.**