**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
**Plaintiff–Appellant,**

v.

**J.C. PENNEY CO., INC.,**
**Defendant–Appellee.**

No. 86–1139.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 22, 1987.

Decided April 4, 1988.

Rehearing and Rehearing En Banc
Denied June 22, 1988.

---

**2.** The *Kubrick* court expressly reaffirmed the vitality of *Urie.* 100 S.Ct. at 358, Note. 7.

Peggy R. Mastroianni (argued), Johnny J. Butler, General Counsel, E.E.O.C., Trial Services Div., Karen MacRae Smith, Washington, D.C., Miguel Ortiz, Trial Atty., E.E.O.C., Detroit, Mich., for plaintiff-appellant.

Robert A. Marsac (argued), Dykhouse & Wise, Detroit, Mich., for defendant-appellee.

Before ENGEL, Chief Judge [*], BOGGS, Circuit Judge, and HILLMAN, Chief District Judge. [**]

BOGGS, *Circuit Judge.*

The Equal Employment Opportunity Commission ("EEOC") charges J.C. Penney Company ("Penney") with sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The EEOC challenges the "head of household" provision of Penney's medical and dental insurance plan, which permits a Penney employee to elect coverage for his or her spouse only if the spouse earns less than the employee. The district court granted partial summary judgment to Penney, 632 F.Supp. 871, holding that the "head of household" requirement could be challenged only under subsection 703(a)(1)

---

[*] The Honorable Albert Engel assumed the duties of Chief Judge effective April 1, 1988.

[**] The Honorable Douglas W. Hillman, Chief Judge of the United States District Court for the Western District of Michigan, sitting by designation.

of Title VII rather than subsection (a)(2).[1] The court further held that disparate impact analysis could be used only in claims under subsection (a)(2), so that the EEOC had to proceed under a disparate treatment analysis and prove intentional discrimination to succeed in its claim under subsection (a)(1).

The trial proceeded under a disparate treatment analysis. The district court found that the "head of household" requirement did have a disparate impact on female employees, but that the EEOC had not proven a discriminatory motive in Penney's adoption of the requirement, and entered judgment for Penney. The EEOC appeals, arguing that the district court erred in holding that disparate impact analysis could not be applied to section 703(a)(1) claims. We hold that even if disparate impact analysis is applied to section 703(a)(1) claims of discrimination in fringe benefits, the "head of household" requirement in this case is a "factor other than sex" so that the resulting differential in compensation is authorized by the Bennett Amendment to Title VII, 42 U.S.C. § 2000e–2(h). Accordingly, we affirm the judgment of the district court.

## I

Determining whether disparate impact analysis may be used under section 703(a)(1) as well as (a)(2) is a difficult and unsettled question. The Supreme Court has not had to rule on the issue. The major disparate impact cases, *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), and *Dothard v. Rawlinson*, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977), do not differentiate between subsection (a)(1) and (a)(2), but speak only of violations of Title VII or the Act. The Court stated in *International Broth-*

*erhood of Teamsters v. United States*, 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977), that "[e]ither theory may, of course, be applied to a particular set of facts." Since then, the Court has clearly held that section 703(a)(2) claims may be pursued on a disparate impact theory, *Connecticut v. Teal*, 457 U.S. 440, 448, 102 S.Ct. 2525, 2531, 73 L.Ed.2d 130 (1982), but has specifically reserved the question as to whether disparate impact analysis may be used under section 703(a)(1). *Nashville Gas Co. v. Satty*, 434 U.S. 136, 144, 98 S.Ct. 347, 352, 54 L.Ed.2d 356 (1977).

The lower courts have generally followed the Supreme Court's lead by not addressing the issue directly. The courts have applied disparate impact analysis to wage compensation claims without considering whether the claims were being brought under section 703(a)(1) or (a)(2). *See EEOC v. Ball Corp.*, 661 F.2d 531, 540 (6th Cir. 1981); accord, *Liberles v. County of Cook*, 709 F.2d 1122, 1130 (7th Cir.1983); *Bonilla v. Oakland Scavenger Co.*, 697 F.2d 1297, 1302–04 (9th Cir.1982), *cert. denied*, 467 U.S. 1251, 104 S.Ct. 3533, 82 L.Ed.2d 838 (1984). There are only two circuit court decisions which address the question directly. The first, *Wambheim v. J.C. Penney Co.*, 705 F.2d 1492, 1494 (9th Cir.1983), *cert. denied*, 467 U.S. 1255, 104 S.Ct. 3544, 82 L.Ed.2d 848 (1984), held, without discussion, that section 703(a)(1) allowed the use of disparate impact analysis.

The second and most recent case, *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1126–27 (7th Cir.1987), analyzed the issue in more detail. The court considered the textual argument that the language "to discriminate" in section 703(a)(1) requires proof of intentional discrimination, while the "tend

1. Sections 703(a)(1) and (2) of Title VII provide: (a) It shall be an unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
42 U.S.C. § 2000e–2(a).

to deprive" language in (a)(2) allows proof by disparate impact, but held that the contrary assumption of applying disparate impact analysis to section 703(a)(1) claims was too long established to be lightly overruled. The court concluded that disparate impact analysis should be allowed under section 703(a)(1) as it could find no reason why a wage discrimination claim should not receive the same strict scrutiny as a claim of discrimination in hiring or promotion. The court was persuaded that the textual distinction between the two subsections was not clear enough to justify the complex inquiries required if plaintiffs had the benefit of the more liberal "disparate impact" analysis only under section 703(a)(2). It might then be crucial whether "employment opportunities" or "status as an employee" under (a)(2) were coextensive with "terms, conditions, or privileges of employment" under (a)(1).

Previous Sixth Circuit cases assume that either disparate treatment or disparate impact analysis can be applied to a particular set of facts without deciding whether the claim is brought under section 703(a)(1) or (a)(2). *Peters v. Wayne State University,* 691 F.2d 235, 238–40 (6th Cir.1982), *vacated and remanded on other grounds,* 463 U.S. 1223, 103 S.Ct. 3566, 77 L.Ed.2d 1406 (1983); *Rowe v. Cleveland Pneumatic Co.,* 690 F.2d 88, 92 (6th Cir.1982); *EEOC v. Ball Corp.,* 661 F.2d 531, 540 (6th Cir. 1981). We agree with the reasoning of the Seventh Circuit in *Colby* that this assumption should not be lightly overturned. We are unwilling to adopt the district court's holding that disparate impact claims cannot be brought under section 703(a)(1) as the rule of decision in the Sixth Circuit, without further guidance from the Supreme Court.

## II

■ However, even assuming that the EEOC could have brought its claim of sex discrimination in fringe benefits under a disparate impact theory, we hold that the "head of household" requirement is a valid

"factor other than sex" justifying a differential in benefits under the Bennett Amendment to Title VII, 42 U.S.C. § 2000e–2(h).[2] The requirement is therefore not an unlawful employment practice under Title VII and the district court's dismissal of the EEOC's claim was correct.

The Bennett Amendment, the last sentence of section 703(h) of Title VII, was designed to incorporate the affirmative defenses to wage discrimination claims under the Equal Pay Act into Title VII. *County of Washington v. Gunther,* 452 U.S. 161, 168, 101 S.Ct. 2242, 2247, 68 L.Ed.2d 751 (1981). It provides:

> It shall not be an unlawful employment practice under this subchapter for any employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees of such employer if such differentiation is authorized by the provisions of section 206(d) of Title 29.

42 U.S.C. § 2000e–2(h).

The relevant section of the Equal Pay Act provides:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1). The Bennett Amendment's "factor other than sex" defense was raised before the district court, and may

---

**2.** Health insurance and other fringe benefits constitute compensation within the meaning of Title VII. *Newport News Shipbuilding & Dry*

*Dock Co. v. EEOC,* 462 U.S. 669, 682, 103 S.Ct. 2622, 2630, 77 L.Ed.2d 89 (1983).

properly be considered by this court on appeal.

Penney contends that the Bennett Amendment precludes any claim of wage discrimination based on disparate impact, arguing that the Equal Pay Act allows a wage differential if it is based on *any* factor other than sex, so that a claim of discrimination based on the disparate impact resulting from the use of this factor would automatically be barred. The Seventh Circuit has accepted this argument in dicta. *Colby*, 811 F.2d at 1127; *American Nurses' Association v. Illinois*, 783 F.2d 716, 723 (7th Cir.1986).

In our circuit, however, the Bennett Amendment cannot constitute a blanket bar to all claims of wage discrimination based on disparate impact because the "factor other than sex" defense does not include literally *any* other factor, but a factor that, at a minimum, was adopted for a legitimate business reason. *See Bence v. Detroit Health Corp.*, 712 F.2d 1024, 1029–31 (6th Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984). *See also Odomes v. Nucare, Inc.*, 653 F.2d 246, 251–52 (6th Cir.1981) (a male-dominated training program was an "illusory" and "post-event" justification for unequal pay; not a valid "factor other than sex."). The legitimate business reason standard was set out by the Ninth Circuit in *Kouba v. Allstate Insurance Co.*, 691 F.2d 873 (9th Cir.1982), as a means of avoiding either extreme interpretation of the "factor other than sex" defense. The court rejected an interpretation that would allow the use of *any* other factor as that would facilitate an employer's disguising all but the most blatant discrimination. Conversely, the court refused to place an impossibly high standard on the employer by requiring it to show that the factor used does not "perpetuate[ ] historic sex discrimination." *Id.* at 876. The court required instead that the employer show only that the factor was adopted for a legitimate business reason and used reasonably in light of the employer's stated purpose. *Ibid.*

This court in *Bence* similarly took the middle ground by deciding that the "factor other than sex" standard implied a rule between the extremes of permitting *any* other factor and allowing only those factors traditionally included in substantive job evaluations. *Bence*, 712 F.2d at 1030–31. We held that under the circumstances of the case, it was not necessary to adopt the broad "legitimate business reason" standard from *Kouba*, and held only that an employer could not avail itself of the "factor other than sex" defense when it paid lower commission rates to female employees in an attempt to equalize male and female employees' wages because the female employees served a larger market. *Id.* at 1031.

We now hold that the legitimate business reason standard is the appropriate benchmark against which to measure the "factor other than sex" defense. We further hold that Penney has satisfied this standard in its reasons for adopting the head of household requirement for spousal medical insurance coverage. As found by the district judge, Penney adopted the head of household requirement in order to "provide the greatest benefits for the people who needed the coverage," 632 F.Supp. 871, 874, workers without a more highly paid spouse, and because the head of household requirement was an administratively efficient proxy to avoid covering those spouses most likely to have coverage from their own employers. This is a legitimate business justification for choosing this method of supplying an insurance coverage benefit. Any employer choosing a comprehensive fringe benefit package faces the challenge of maximizing employee satisfaction while minimizing or controlling cost. Penney could legitimately conclude that insurance would be more likely to be valuable to a lower-paid spouse, and thus would engender more satisfaction in the employee.

We are not persuaded by the EEOC argument that Penney could have chosen an alternative benefit that would have more closely linked the actual benefit and the goal being sought. The legitimacy of business reasons for adopting one type of fringe benefit package as opposed to another is not undermined by objections that would be more compelling in evaluating

variations in wage claims. Individual employee job performance can be rewarded by individual promotions or pay adjustments. Company-wide fringe benefits must apply to persons in differing circumstances. By definition, a fringe benefit is not directly related to job performance, and will impact employees and groups of employees in different ways. Thus, free parking aids those with cars; health clubs do little for the sedentary.

Many of those impacts may have some statistical correlation to sex. For example, it might easily be the case that more women are in low-paying jobs and do not own cars, or live close to work and use public transportation. More male employees might be elderly or otherwise disinclined to exercise. Even though there can be some element of choice in using these benefits, the gender correlations would still remain. These facts would not detract from a showing of a legitimate belief that the benefits offered would be an appropriate and non-sex based incentive to attract, satisfy and retain employees. Employers (and unions, which are often involved in benefit determination) must be allowed reasonable latitude in determining fringe benefits packages. There was no evidence that Penney made its decision for discriminatory reasons or to impose any social judgments or patriarchal views on its employees. It wanted the biggest "bang for the buck" with its benefit package, and adopted this plan for that reason.

The head of household requirement is thus a valid factor other than sex within the meaning of the Equal Pay Act. The requirement therefore is not an unlawful employment practice under Title VII and the district court correctly dismissed the EEOC's complaint. The judgment of the district court is AFFIRMED.

HILLMAN, District Judge, dissenting.

Although I join in part I of the court's opinion, I cannot agree that the "factor other than sex" defense authorizes the "head of household" classification at issue in this case. Consequently, I respectfully dissent.

Defendant has chosen to extend an employment benefit, spousal health coverage, to employees who earn more than their spouses while denying that benefit to employees who earn less than their spouses. Because this policy produces a disparate impact on women employees, defendant can avoid liability under Title VII only if defendant's reasons for adopting the policy fall within one of the defenses in the Act.

As a preliminary matter, I disagree with the court's conclusion that considerations that would be compelling in evaluating discriminatory wage claims are not relevant to this court's evaluation of plaintiffs' claim of discriminatory fringe benefits. Title VII's prohibition against compensation practices that discriminate against women employees does not vary with the type of compensation chosen by the employer. *See Los Angeles Dept. of Water and Power v. Manhart*, 435 U.S. 702, 712 n. 23, 98 S.Ct. 1370, 1377 n. 23, 55 L.Ed.2d 657 (1978) ("[T]he Bennett Amendment extends the [Equal Pay] Act's four exceptions to all forms of 'compensation' covered by Title VII.")

Because of its disparate impact on women employees, the spousal benefits policy in this case requires the same close judicial scrutiny that courts ordinarily apply to wage policies. The EEOC has taken this position in its interpretive rulings, which, although not controlling, are entitled to great weight. *State of Ohio v. United States Dept. of Health & Human Serv.*, 761 F.2d 1187 (6th Cir.1985); *Brennan v. Owensboro–Daviess County Hosp.*, 523 F.2d 1013, 1028 (6th Cir.1975), *cert. denied*, 425 U.S. 973, 96 S.Ct. 2170, 48 L.Ed.2d 796 (1976). *See* Guidelines on Discrimination Because of Sex, 29 C.F.R. § 1604.9(c) (1987); The Equal Pay Act: Interpretations, 29 C.F.R. § 1620.11(c) (1987) ("Where an employer conditions benefits available to employees on whether the employee is the 'head of household' or 'principal wage earner' in the family unit, the overall implementation of the plan will be closely scrutinized.").

The examples of free parking and health clubs with which the court attempts to

illustrate the difficulty of applying close scrutiny to fringe benefits policies are, I respectfully suggest, misplaced. I agree that those benefits are valuable to some employees and of no value to others. But this disparate impact results from each employee's individual choice to decline the benefit, not from the employer's choice to withhold it. The court's examples would only be helpful to the inquiry in this case if defendant's policy offered spousal coverage to all employees on equal terms and permitted those employees who could or would not use the coverage to decline.

I also cannot agree with the court that defendant's policy is reasonably related to defendant's rationales for adopting the head of household policy, or that those rationales are the type of "legitimate business reasons" that would bring the policy within the "factor other than sex" defense. The court suggests that defendant sought to accomplish three objectives by adopting its policy: "maximizing employee satisfaction," " 'providing the greatest benefits for the people who needed the coverage,' " and "minimizing or controlling cost."

Title VII does not sanction "employee satisfaction" as a justification for every differential increase in compensation without regard to the sex and race of the employees affected or the degree to which employee satisfaction is achieved. If it did, Penney could legally adopt any compensation policy that would "engender more employee satisfaction" in a small group of employees, even if that policy had a disparate impact on employees of one race or sex. Instead, the Act mandates that an employer's policy adequately achieve its asserted business goal.

The majority holds that defendant's policy of unequal compensation for employees is permissible under the "factor other than sex" defense because the policy is "reasonably related" to Penney's asserted goal of maximizing employee satisfaction. Assuming, but not deciding, that Title VII would authorize Penney's head of household policy if the relationship between the policy and employee satisfaction is merely reasonable, I disagree with the court's assumption that defendant demonstrated this rela-

tionship. The percentage of female employees eligible for spousal benefits under defendant's policy is much lower than of male employees. Yet, as of 1983, nearly three-fourths of the affected employees at Penney were female. In my view, a policy that extends benefits to so few employees is not reasonably related to Penney's asserted justification of maximizing employee satisfaction. Furthermore, I cannot join the court in relying on defendant's "belief" regarding the appropriateness or effectiveness of its policy. Penney presented no evidence that the satisfaction of its employees was increased, much less maximized. Perhaps Penney decided satisfying employees who are heads of households was more important to its business than satisfying employees who were not heads of households, but this supposition is unsupported in the record as well. To use the court's phrase, if the "bang" defendant sought was maximum employee satisfaction, it appears to me that Penney got very little "bang" for its "buck."

In addition, my objection to the court's use of employee satisfaction as a legitimate business reason justifying unequal compensation under the "factor other than sex" defense is even more fundamental. Any compensation differential that has a positive effect on a majority of employees may be said to be reasonably related to employee satisfaction, regardless of whether the disadvantaged group of employees is made up of Blacks, women, or some other protected group. The court offers no guidance as to when employee satisfaction ceases to be a legitimate business reason and becomes a pretext for discrimination in compensation.

I now turn to defendant's second rationale for its policy: to provide the greatest benefits for those employees who need coverage. Penney has withheld an employment benefit from a class of employees and their spouses because it unilaterally decided those employees and their spouses did not need the benefit. I submit this rationale for unequal compensation is based on defendant's patriarchal, perceived social justification of what is in the best interest of its employees, rather than a "legitimate business reason." Defendant presented no

link between its effort to aid only those employees whom it has determined need aid and any legitimate business concern. Judge Posner, discussing defendant's plan in the context of another case, suggested the absence of this connection:

> [Plaintiff] can attack Penney's spouse rule under a disparate-impact approach, but of course not all rules that have a disparate impact are unlawful; the defendant can rebut by showing a good business justification for the rule.... It may well be as Penney argues that usually the higher-paid spouse has the more generous provision for coverage of family members, and therefore that the only employees who need spouse coverage are those who earn more than their spouses. But to this the obvious replies ... are first, that under the Penney plans the employee's dependents are covered regardless of the spouse's income relative to the employee's income, and second, that if it is true that the employee won't want coverage, if his (or her) spouse has a higher income, Penney would not be affected by abrogating the head of household rule. No doubt some employees with higher-paid spouses would elect coverage, because the spouse's benefit package might be less generous ... or the spouse might be worried about his own (or her own) job security. Why not let employees in those circumstances elect coverage? There may be answers to these questions, but it is not obvious what they are.

*Colby v. J.C. Penney Co., Inc.,* 811 F.2d 1119, 1128 (7th Cir.1987).

As the Ninth Circuit stated in *Kouba v. Allstate Ins. Co.,* 691 F.2d 873, 876 (9th Cir.1982), "The Equal Pay Act concerns business practices. It would be nonsensical to sanction the use of a factor that rests on some consideration unrelated to business." I cannot agree with the majority that by adopting the Equal Pay Act or the Bennett Amendment, Congress intended to authorize discriminatory wage policies based on whatever conception of social justice an employer may choose to pursue.

Finally, the court recognizes defendant's desire to minimize cost as an additional reason for withholding spousal benefits from employees who are not heads of households. Although cost is a concern in almost every business decision, cost alone is no defense once discrimination under Title VII has been shown. *See Arizona Governing Committee for Tax Deferred Annuity and Deferred Compensation Plans v. Norris,* 463 U.S. 1073, 1084 n. 14, 103 S.Ct. 3492, 3499 n. 14, 77 L.Ed.2d 1236 (1983); *Newport News,* 462 U.S. at 685 n. 26, 103 S.Ct. at 2632 n. 26; *Manhart,* 435 U.S. at 716–17 & n. 32, 98 S.Ct. at 1379–80 & n. 32. Withholding benefits from a group of employees is very often cheaper than extending the benefits equally to all. However, if the group disadvantaged by the policy is one protected by Title VII, the employer must demonstrate some additional business reason that adequately explains why the employer drew the line where it did. By endorsing cost minimization as a "legitimate business reason" that would bring a discriminatory policy within the "factor other than sex" defense, the court accomplishes what it claims to reject: it interprets Title VII to "facilitate an employer's disguising all but the most blatent discrimination." In my judgment, the majority expands the "factor other than sex" defense beyond its intended scope.

For these reasons, I would reverse the judgment of the court below and remand the case for further proceedings.