Patrice **FAGEN**, Diane Havens, Valerie Kreimeyer, Connie Mitchell, Dorothy Riddle, Lori Noland, Pamela Jackson, Debra Gaffney, and Michael Roberts Plaintiffs,

v.

State of **IOWA** and Department of Inspections and Appeals, Defendants.

No. 4:02–CV–90186.

United States District Court, S.D. Iowa, Central Division.

July 8, 2004.

Pamela J. Walker, Sherinian & Walker PC, West Des Moines, IA, for Plaintiffs.

Gordon E. Allen, Jean M. Davis, Attorney General of Iowa, David S. Steward, Attorney General, Environmental Law Division, Des Moines, IA, for Defendants.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

The above-captioned case was tried to a jury and a verdict for Defendant State of Iowa and Defendant Department of Inspection and Appeals ("DIA") was returned on April 27, 2004. Plaintiffs have filed a motion for judgment pursuant to Federal Rule of Civil Procedure 50(b), or, in the alternative, for a new trial under Fed.R.Civ.P. 59. Plaintiffs argue that this Court committed the following errors: 1) failing to grant Plaintiffs' Motion in Limine requesting exclusion of all evidence offered by Defendants to support its "market conditions" defense; 2) failing to grant Plaintiffs' Motion for a Directed Verdict on the basis that Defendants had not established an affirmative defense to Plaintiffs' claim because "market conditions" was not a legitimate factor other than sex; 3) submitting instructions to the jury indicating that Defendants could establish their affirmative defense by showing that the pay discrepancy between Plaintiffs and the male comparator was based upon "any" factor other than sex, rather than a "legitimate" factor other than sex; and 4) failing to submit a jury instruction informing the jury that budget constraints of Defendants was not a legitimate factor other than sex.

For the reasons discussed below, Plaintiffs' motion for judgment and new trial are denied.

## I. BACKGROUND

On April 22, 2002, Plaintiffs, eight current and former employees of Defendant DIA, filed a complaint against Defendants under the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), alleging that Defendants violated the Act by hiring a male, James Berkley, at a salary higher than that of Plaintiffs to do substantially equal work.

Plaintiffs and Mr. Berkley were all employed by DIA as Health Facilities Surveyors. Health Facilities Surveyors are inspectors who conduct on-site inspections of the care, treatment, and services provided to the residents and patients of facilities that are licensed and certified by DIA. At trial, evidence was presented by Plaintiffs' witnesses to demonstrate that all Health Facilities Surveyors, including Plaintiffs and Mr. Berkley, performed "equal work," as that term is defined by the EPA, during the period in question. The jury concluded that Plaintiffs proved by a preponder-

ance of the evidence that Plaintiffs and Mr. Berkley performed jobs requiring substantially equal skill, effort, and responsibility under similar working conditions. Neither party has challenged this finding. Additionally, the parties stipulated that Defendants paid Plaintiffs a lower wage than Mr. Berkley.

At issue in Plaintiffs' motion is Defendants' affirmative defense: that Defendants paid Plaintiffs less than Mr. Berkley because of a factor other than sex. At trial, Defendants presented evidence of a two-tiered rationale for Mr. Berkley's higher salary: 1) Mr. Berkley, as opposed to Plaintiffs, was hired at a time when DIA policy permitted hiring Health Facilities Surveyors at an advanced pay rate based on an individualized assessment of qualifications; and 2) Mr. Berkley told DIA during the interview process that he could not accept the job for less than what he was making as Director of Nursing at his then-current job.[1]

Plaintiffs were all hired for the Health Facilities Surveyor job at step 1 of the applicable pay grade. At the time they interviewed for the position, each Plaintiff was told that salary was not negotiable. The Defendants' witnesses at trial testified that in the fall of 2001, Marvin Tooman, then administrator of DIA, contacted then-Director of DIA Kevin Techau with concerns about DIA's ability to be competitive in attracting well-qualified nurses to the Health Facilities Surveyor position, especially given the nursing shortage that was ongoing at that point. Mr. Tooman requested that the Department be authorized to offer applicants for the Health Facilities Surveyor position a starting salary

higher than step 1. Mr. Techau granted approval for this change.

Two women who also applied for the Health Facilities Surveyor position during the time period in which Defendants' witnesses testified that DIA was allowing hire at an advanced salary rate, Gerry Braynard and Tammy Torstenson, testified at trial that they were told during their interviews that salary was non-negotiable and that they would have to start at step 1. However, despite the fact that each was verbally offered the position at step 1, Ms. Braynard was ultimately sent a letter offering her employment starting at a step 3 salary and Ms. Torstenson received a written offer of employment starting at step 2. Ms. Braynard took the position at step 3; Ms. Torstenson, however, turned down the offer due to her stated concerns about the travel entailed by the job. Ms. Torstenson was not offered a higher salary to entice her to take the job.

Mr. Berkley testified at trial that he did not recall discussing salary at his interview or being told that salaries were not negotiable. Mr. Berkley rejected DIA's initial offer of employment, stating that he could not accept employment for a salary that was lower than what he was currently earning, especially with the extensive travel requirements of the Health Facilities Surveyor job. Subsequently, Mr. Berkley was offered the Surveyor job at a step 6 rate. It was unclear from the testimony who authorized the step 6 rate for Mr. Berkley.

In April of 2002, after offering the position to Mr. Berkley at a step 6 rate, Defendants were faced with state budgetary con-

---

1. In detailing the testimony regarding Defendants' affirmative defense, the Court relies largely on its own recollection and the representations of Plaintiffs and Defendants in the briefing on this motion. A complete transcript has not been provided to the Court of the trial testimony, although Defendants provided portions of the testimony of Stephen Young, Deputy Director of DIA at the time of the events underlying Plaintiffs' claim, and a portion of Plaintiffs' closing argument.

cerns and reverted back to the policy of hiring all applicants for the Health Facilities Surveyor position at step 1. During the window of individualized salary determinations, three other Health Facilities Surveyors in addition to Mr. Berkley, Ms. Braynard, and Ms. Torstenson were hired. Ms. Ermer, a female, was hired at step 1; Ms. Franklin, a female, was hired at step 2; and Mr. Rohner, a male, was hired at step 1. After the policy was discontinued, neither male nor female Health Facilities Surveyors were hired above a step 1.

## II. DISCUSSION

### A. Legal Standards

#### 1. Motion for Judgment: Fed.R.Civ.P. 50

The standard for judgment as a matter of law under Rule 50 mirrors the standard for summary judgment under Fed.R.Civ.P. 56. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence. *Id.* (citations omitted). Judgment as a matter of law is appropriate only when all of the evidence points one way and is "susceptible of no reasonable inference sustaining the position of the nonmoving party." *Simmons Poultry Farms, Inc. v. Dayton Road Development Co.*, 82 F.3d 217, 220 (8th Cir.1996) (citing *White v. Pence*, 961 F.2d 776, 779 (8th Cir.1992)). In sum, the Court must determine whether there was sufficient evidence to support a jury verdict for Defendants. *Id.* In contrast to motions for a new trial under Rule 59, the question for the Court in a motion for judgment is a legal one. *White*, 961 F.2d at 779.

#### 2. Motion for New Trial: Fed.R.Civ.P. 59

In a motion for new trial under Rule 59, the question for the Court is whether the verdict is against the weight of the evidence. *White*, 961 F.2d at 780. In making this determination, the trial court can rely on its own reading of the evidence, weighing it and making credibility determinations where necessary. *Id.* The ultimate test for the Court is whether there has been a miscarriage of justice, and this determination is within the district court's discretion.

> The district court's discretion is not boundless, however ... [T]he district court is not " 'free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.' "

*Id.* (citing *Fireman's Fund Insurance Co. v. Aalco Wrecking Co.*, 466 F.2d 179, 186 (8th Cir.1972) (quoting *Tennant v. Peoria & Pekin Union Ry. Co.*, 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520 (1944))). In cases where the outcome turns on choosing between two plausible stories offered by credible witnesses, the issue is basically a credibility issue for the jury and not a weight of the evidence issue for the Court. *Id.* at 781.

### B. Market Conditions

Plaintiffs argue that this Court erred in not granting Plaintiffs' pretrial motion in limine which sought to exclude all evidence offered by Defendants in support of their affirmative defense to the extent such evidence went to "market conditions." In their motion in limine, Plaintiffs sought to exclude two specific categories of testimony under the "market conditions" umbrella: 1) evidence that Mr. Berkley, the male comparator, was paid a higher starting

salary because of a policy change within the DIA regarding starting salaries of Health Facilities Surveyors; and 2) evidence tending to show that Mr. Berkley was hired at a higher salary because he demanded a higher salary than Plaintiffs in order to accept the position.

■ As this Court noted in its April 13, 2004 Memorandum Opinion and Order denying Plaintiffs' motion in limine,

Plaintiffs are correct that an employer's generalized argument that "market conditions" demanded that men be paid more than women does not constitute a legitimate factor other than sex sufficient for an employer to prevail in an Equal Pay Act case. *See, e.g., Corning Glass Works v. Brennan,* 417 U.S. 188, 205, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974).

However, as the Court pointed out in that opinion as well, Defendants did not offer the above-referenced testimony to support the generalized notion that the DIA had to pay men more than women in order to attract them to Health Facilities Surveyor positions. Instead, Defendants argued that they were permitted to make an individualized salary determination in the case of Mr. Berkely because DIA had changed its policy to allow for such a determination during the time period in which Mr. Berkley was hired. Second, in making the individualized determination regarding Mr. Berkley's initial rate of pay, Defendants presented testimony that they offered Mr. Berkley a higher salary level than step 1 because he indicated he could not accept the job otherwise.

In *Taylor v. White,* 321 F.3d 710 (8th Cir.2003), the Eighth Circuit considered the issue of whether there are any per se limitations to the "factor other than sex" exception to the Equal Pay Act. The particular factor addressed in *Taylor* was the Defendant's use of salary retention policies, which allowed workers to transfer to a lower paying job, while still retaining the

same pay rate they were paid at their previous job, when their jobs were eliminated through reductions in force. The purpose of this policy was to encourage workers to continue their employment with Defendant while waiting for an appropriate job to become available rather than seeking other work at a pay level commensurate with the job that had been eliminated. In determining whether the salary retention policy violated the EPA, the Court held that "given [the] facially broad exception, we are reluctant to establish any per se limitations to the 'factor other than sex' exception by carving out specific, non-gender-based factors for exclusion from the exception." *Id.* at 718. The Court further noted that

although we recognize that an employer might apply a salary retention policy in a discriminatory fashion or use such a policy as a vehicle to perpetuate historically unequal wages caused by past discrimination, these potential abuses do not provide valid bases to adopt a per se rule that declares all salary retention practices inherently discriminatory. Rather, these risks simply highlight the need to carefully examine the record in cases where prior salary or salary retention policies are asserted as defenses to claims of unequal pay.

*Id.*

■ Although the *Taylor* panel specifically addressed a salary retention policy, it did indicate with approval a Seventh Circuit case which refused to adopt a per se rule to exclude past salary as a qualifying "factor other than sex." *Id.* at 719 (citing *Covington v. Southern Illinois Univ.,* 816 F.2d 317, 322–23 (7th Cir.1987)). Consequently, this Court again refuses Plaintiffs' invitation to find that prior salary can never be a legitimate factor other than sex.

The jury in this case was specifically instructed on market conditions as follows:

Final Instruction No. 12—Market Factors

The fact that the Defendants' bargaining power is greater with respect to women than with respect to men is not a legitimate factor other than sex. Paying a lesser rate to female employees simply because the market will bear that rate is impermissible under the Equal Pay Act. Thus, the Defendants have not met their burden of proving that a wage differential was a result of a factor other than sex if they establish that they paid a specific male employee more than the female Plaintiffs because market conditions demanded the higher pay.

■ Under the law as stated by the Court, Plaintiffs have not demonstrated that they are entitled to judgment as a matter of law or to a new trial. Viewing the evidence in the light most favorable to Defendants, the jury could reasonably have concluded that Defendants' decision to hire Mr. Berkley at a step 6 was based upon a factor other than sex. Defendants' witnesses testified about the policy change instituted by DIA that allowed for individualized salary assessments, which was in place when Mr. Berkley was hired. Defendants' witnesses, including Mr. Berkley, testified that Mr. Berkley explicitly stated that he could not take the Health Facilities Surveyor position for less money than he was making in his then-current position as Director of Nursing at On With Life. In response to this, DIA offered more money. Neither Ms. Braynard nor Ms. Torstenson, who were also hired during the individualized salary assessment window, explicitly rejected the job because of the salary. Ms. Torstenson testified that she indicated she could not accept the job because of the travel requirements. Ms. Braynard accepted the job at a step 1 salary, though prior to commencement of work she was informed she would be paid at step 3.

Additionally, the evidence presented at trial demonstrated that there was at least one male Health Facilities Surveyor hired after Mr. Berkley and after the window of individualized salary assessments had been closed by DIA who was hired at step 1, like the Plaintiffs.

Under this set of facts, the jury acted reasonably in finding that Defendants had satisfied their burden of proving that the decision to hire Mr. Berkley at a step 6 was based on a factor other than sex, and was not based upon impermissible "market conditions," as that term has developed in EPA case law.

■ Plaintiffs have also failed to demonstrate that the verdict for Defendants rendered by the jury was against the weight of the evidence, as required for a new trial under Rule 59. This Court is mindful that, although trial courts have discretion to weigh trial evidence when deciding a motion under Rule 59, the discretion is not boundless. *See White v. Pence,* 961 F.2d 776, 780 (8th Cir.1992). The Court does not believe that the verdict rendered by the jury in this case was against the weight of the evidence. Plaintiffs and Defendants each presented evidence attempting to demonstrate the motive underlying Defendants' decision to pay Mr. Berkley more than the female Plaintiffs. The jury rendered a decision which was supported by the evidence, and this Court is unwilling on these facts to overturn that decision.

C. "Legitimate" Factor Other Than Sex

■ Plaintiff also argues that this Court erred in instructing the jury that Defendants could establish their affirmative defense by showing the pay discrepancy between Plaintiffs and Mr. Berkley was based upon "any" factor other than sex, rather than instructing the jury that the discrepancy must be based upon a "legitimate" factor other than sex.

The full text of the jury instruction given in this case dealing with the factor other than sex defense to the Equal Pay Act is as follows:

### Final Instruction No. 9—Affirmative Defense: Factor Other Than Sex

If you determine that Plaintiffs have established by a preponderance of the evidence all of the elements of their Equal Pay Act case, then the burden of proof shifts to Defendants to prove by a preponderance of the evidence their affirmative defense that the difference in pay is justified by a factor other than the sex of the employees.

To establish that this exception applies, Defendants must show that Plaintiffs' sex provided no part of the basis for the wage difference.

If Defendants establish that the difference in pay is caused by any factor other than the sex of the employee, you must decide in favor of the defendants. On the other hand, if you determine that Defendants have failed to prove that a difference in pay is caused by a factor other than sex (and if you have already concluded that Plaintiffs met their burden of proof), then you must decide in favor of Plaintiffs.

Further, the instruction immediately following Instruction No. 9 instructed jurors that in order to establish the defense, "Defendant must both produce evidence and persuade you that the need was valid and that it was not sex-based."

The Equal Pay Act itself uses the "any factor other than sex" language in articulating the exceptions to the rule of equal pay for equal work. *See* 29 U.S.C. § 206(d)(1). Plaintiffs point to authority indicating that courts have rejected a strict reading of the Act that would allow virtually any factor other than sex to qualify. *See Belfi v. Prendergast*, 191 F.3d 129, 136 (2d Cir.1999) ("to successfully establish the 'factor other than sex' defense, an employer must also demonstrate that it had a legitimate business reason for implementing the gender-neutral factor that brought about the wage differential"); *E.E.O.C. v. J.C. Penney Co., Inc.*, 843 F.2d 249 (6th Cir.1988) ("the 'factor other than sex' defense does not include literally *any* other factor, but a factor that, at a minimum, was adopted for a legitimate business reason"). This Court does not disagree with that authority. The instructions given to the jury in this case satisfactorily advised them that any reason offered by Defendants had to be a reason not based upon sex and that such reason had to be "valid." The words "legitimate" and "valid" are synonymous. Roget's New Millennium Thesaurus, First Edition (2004). These instructions comport with the Equal Pay Act's language and intent.

### D. Budget Constraints

■ Lastly, Plaintiffs argue that this Court erred in failing to give a jury instruction mandating that budget constraints are not a legitimate factor other than sex under the EPA. The Court does not recall that Plaintiffs requested an instruction indicating that budget constraints were not a legitimate factor other than sex for the purposes of Defendants' affirmative defense. However, even if Plaintiffs had requested such an instruction, the instructions provided to the jury were adequate to address Plaintiffs' concern.

Plaintiffs are correct that if Defendants' decision to pay Mr. Berkley a higher salary than Plaintiffs was based upon Mr. Berkley's sex, budget constraints could not justify perpetuation of that discrimination. The jury, however, was instructed to scrutinize the factors that went into Defendants' decision to determine whether the decision was based on a factor other than

sex. Defendants presented testimony that budget constraints forced them to end the policy that they had previously implemented, and which was in place at the time Mr. Berkley was hired, allowing individualized salary determinations for Health Facilities Surveyors upon hire. Once budget constraints forced the end of this policy, neither male nor female candidates for the position were hired at above a step 1 salary.

The Court's instruction to the jury on the "factor other than sex" affirmative defense was more than adequate to inform the jury that no justification that was based upon sex could excuse Defendants from the requirements of the EPA.

### III. ORDER

Plaintiffs' Motion for Judgment Notwithstanding the Verdict or, in the Alternative, for New Trial is hereby **denied**.

IT IS SO ORDERED.