**UNIVERSITY OF CINCINNATI, d/b/a University Hospital, Plaintiff,**

v.

**Donna SHALALA, Defendant.**

No. C–1–93–841.

United States District Court,
S.D. Ohio.

Nov. 8, 1994.

Peter Cassady, Cincinnati, OH, for plaintiff.

Donetta Wiethe, Cincinnati, OH, for defendant.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court upon plaintiff's June 3, 1994, motion for summary judgment (Doc. No. 9); defendant's July 15, 1994, cross-motion for summary judgment (Doc. No. 11); and plaintiff's August 31, 1994, reply to defendant's cross motion for summary judgment (Doc. 13). Pursuant to the parties' April 25, 1994, stipulation to resolve this matter through cross-motions for summary judgment (Doc. No. 8), and parties' October 31, 1994, amendment thereto (Doc. No. 14), this court, herein, enters its decision.

### Findings of Fact

1) Plaintiff, the University of Cincinnati, is a state university, located in Ohio, which provides medical and hospital services through its operation of University Hospital.[1] (Doc. Nos. 1 and 5). At all times relevant hereto, plaintiff has been a participant in the Medicare program, administered by the United States Department of Health and Human Services (hereinafter, HHS). *See* 42 U.S.C. § 1395 *et seq.* (Doc. Nos. 1 and 5).

2) Defendant, Donna Shalala, is the current Secretary of HHS. Through the Health Care Financing Administration (hereinafter, HCFA), an entity within HHS, defendant is responsible for providing Medicare reimbursements to providers, such as University Hospital for outpatient end-stage renal dialysis (hereinafter, ESRD) treatments performed on qualifying Medicare patients. (Doc. Nos. 1 and 5).

3) In 1989, HCFA reimbursed participating providers on a prospective payment basis at a composite rate of $129.33 per dialysis treatment (hereinafter, composite rate). (Doc. No. 5). In accordance with applicable Medicare program statutory authority described in 42 U.S.C. § 1395rr(b)(7) and regulatory authority at 42 C.F.R. §§ 413.170(f) and (g), HCFA has the authority to grant qualifying providers, such as plaintiff, an exception from the standard composite rate of reimbursement. (Doc. No. 11).

4) In accordance with the allowance for exceptions from the standard composite rate, during the fiscal year ending June 30, 1989, HCFA reimbursed plaintiff at an excepted rate of $192.06 per dialysis treatment. (Doc. Nos. 1 and 9).

5) Approval for exceptions to the composite rate, such as that extended to plaintiff, periodically expires. (Doc. No. 9). Providers who wish to be reimbursed at a rate other than the then-existing composite rate, thereafter, must apply for renewed exception status. (Doc. No. 9).

6) On November 16, 1989, HCFA advised plaintiff and other providers that all then-approved exception rates would expire on November 30, 1989, and the standard composite rate would take effect as of December 1, 1989. (Doc. No. 9). HCFA announced that on December 1, 1989, the exception process would be reopened, with providers having until May 29, 1990, to file a new exception request. (Doc. No. 9). Existing exceptions continued without interruption, as long as the exception request was filed on or before December 1, 1989, and subsequently approved. (Doc. No. 9).

7) On January 26, 1990, plaintiff filed an exception request with Community Mutual Insurance Company, defendant's duly-appointed fiscal intermediary (hereinafter, intermediary), seeking reimbursement at the rate of $280.40 per dialysis treatment. (Doc. No. 11). Plaintiff based its exception request on atypical services, pursuant to 42 C.F.R. § 413.170(g)(1). (Doc. No. 1).

8) On April 9, 1990, through the intermediary, HCFA rejected plaintiff's exception request, finding that plaintiff had failed to provide sufficient objective evidence as to the following points: 1) that its dialysis treatments met "atypical service intensity" criteria; 2) that its costs per treatment were reasonable; and 3) that its excess costs were attributable directly to the atypical service intensity required by the serious level of illness suffered by its dialysis patients. (Doc. No. 1).

---

1. Although the University of Cincinnati is the official named plaintiff in this matter, this court also refers to plaintiff as University Hospital or Hospital.

9) On May 1, 1990, plaintiff resubmitted its exception request, including additional data within such resubmission. (Doc. No. 1). On July 2, 1990, through the intermediary, HCFA advised plaintiff that its exception request was approved in the amount of $189.18 per dialysis treatment, a sum $59.85 more than the composite rate of $129.33. The exception request approval was made effective May 1, 1990, the date plaintiff submitted adequate supporting documentation. In arriving at the $189.18 amount, HCFA approved:

a) a total labor cost per treatment of $79.47 for registered nurses (hereinafter, nursing salary increase), $39.47 above the $40,00 included within the composite rate;

b) an exception in the amount of $13.00 per treatment for supplies; and

c) an exception in the amount $7.38 per treatment for nursing fringe benefits, as derived from HCFA's utilization of an employee benefits rate of 18.7 percent which defendant claimed to be the national average benefit rate for ESRD facilities included in the composite rate.[2]

10) Because HCFA did not entirely grant plaintiff's exception request, plaintiff, pursuant to 42 C.F.R. § 413.170(h), filed a timely appeal from HCFA's partial denial with the Provider Reimbursement Review Board (hereinafter, the PRRB). (Doc. No. 5, Attachment). In its appeal, plaintiff contended that HCFA improperly (1) established the effective date of plaintiff's renal exception rate; (2) denied a portion of the fringe benefits relating to nursing salaries for which plaintiff was granted an exception; (3) denied non-nursing salary costs relating to the plaintiff's renal dialysis exception request; and (4) denied excess medical director, laundry and linen, and social service overhead costs relating to the plaintiff's renal dialysis exception request. (Doc. No. 5, Attachment).

11) On August 25, 1992, the PRRB conducted an evidentiary hearing on plaintiff's appeal. (Doc. No. 5, Attachment 5). On August 5, 1993, the PRRB issued a decision affirming HCFA as to three of the appealed issues. (Doc. No. 5, Attachment). The PRRB held that HCFA properly established the effective date of plaintiff's exception rate, properly denied non-nursing salary costs relating to the plaintiff's renal dialysis exception request, and properly denied overhead costs relating to the plaintiff's renal dialysis exception request. (Doc. No. 5, Attachment). However, the PRRB reversed HCFA's decision that denied plaintiff a portion of the fringe benefits relating to nursing salaries for which plaintiff was granted an exception. (Doc. No. 5, Attachment).

12) The intermediary, thereafter, asked the Administrator of HCFA to review the fringe benefit issue on which the PRRB had reversed HCFA's decision. (Doc. No. 5, Attachment). On October 1, 1993, the HCFA Administrator issued a decision reversing the PRRB on the fringe benefit issue, and affirmed the PRRB on all other issues. (Doc. No. 5, Attachment). With regard to the fringe benefits question, HCFA held that plaintiff failed to show that its fringe benefit costs, above the claimed national average, were directly attributable to its atypical ESRD patient mix. Rather, HCFA found that such excess fringe benefit costs were related to plaintiff's retirement and tuition remission programs.

13) On December 1, 1993, plaintiff timely filed its complaint in this court, appealing HCFA's decision with respect to the fringe benefits and overhead cost issues. In particular, plaintiff claimed that defendant's decision to limit the nursing fringe benefits exception request, as well as defendant's decision to deny the overhead cost exception request, were arbitrary, capricious, an abuse of discretion, not in accordance with the law, and unsupported by substantial evidence, all in violation of 5 U.S.C. § 706.

## Opinion

### Standard of Review and Applicable Law

 In an action for judicial review brought under 5 U.S.C. § 706, formerly the Administrative Procedure Act (APA), a court may set aside an agency action that is arbitrary, capricious, an abuse of discretion, or

---

**2.** In particular, HCFA applied the 18.7 percent to the $39.47 nursing salary increase to arrive at the exception amount of $7.38 for fringe benefits. (Doc. No. 11).

otherwise not in accordance with law, or which is unsupported by substantial evidence.[3] 5 U.S.C. § 706(2)(A) and (E). Under the arbitrary and capricious standard, the court must determine "whether the agency decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment." *Motor Vehicle Mfrs. Assn. v. State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). This standard of review is narrow. *See Id.* "The court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971), *on remand,* 335 F.Supp. 873 (W.D.Tenn.1972). Meanwhile, under the substantial evidence standard, the evidence relied upon by the agency in reaching its determination must be "something more than a mere scintilla.... [, meaning] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). The court is to consider only the bases upon which the agency actually relied in reaching its decision. *Volpe,* 401 U.S. at 420, 91 S.Ct. at 825. Moreover, an agency's interpretation of its own regulations is entitled to considerable deference. *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), *reh'g denied,* 380 U.S. 989, 85 S.Ct. 1325, 14 L.Ed.2d 283 (1965); *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947), *reh'g denied,* 332 U.S. 783, 68 S.Ct. 26, 92 L.Ed. 367 (1947); *Shaker Medical Ctr. Hosp. v. Secretary of Health and Human Servs.,* 686 F.2d 1203, 1208 (6th Cir.1982). The Court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of the agency.

*Ohio Dep't of Mental Retardation and Developmental Disabilities v. Dep't of Health and Human Services,* 761 F.2d 1187, 1193 (6th Cir.1985). If the administrator's interpretation is reasonable, the court must uphold it even if the court would have reached a different interpretation had that issue first been presented to it. *Tallman,* 380 U.S. at 16, 85 S.Ct. at 801. However, the court must reject administrative constructions which are inconsistent with a statutory mandate or which frustrate congressional policy. *Federal Election Comm'n v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 29–33, 102 S.Ct. 38, 41–43, 70 L.Ed.2d 23 (1981).

It is the language set forth at 5 U.S.C. § 706(2)(A) and (E) that this court must apply to adjudge whether defendant properly denied plaintiff overhead exceptions request, as well as a portion of the fringe benefits relating to nursing salaries for which plaintiff was granted an exception. *See Shaker Medical Ctr. Hosp.,* 686 F.2d 1203; *Mercy Hosp. of Miami, Inc. v. Shalala,* Civ.A. No. 91–3268 (RLC), 1993 WL 475517, at *11 (D.D.C.1993).

The statutory and regulatory frame-work that this court must utilize to adjudge whether defendant violated 5 U.S.C. § 706(2)(A) or (E) is based on Medicare statutory provisions described at 42 U.S.C. § 1395rr(b)(7) and regulatory provisions set forth at 42 C.F.R. § 413.170(f) and (g).

Pursuant to the applicable statutory language, as described at 42 U.S.C. § 1395rr(b)(7):

> The Secretary shall provide by regulation for a method (or methods) for determining prospectively the amounts of payments to be made for dialysis services furnished by providers of services and renal dialysis facilities ... *The Secretary shall provide for such exceptions to such methods as*

---

**3.** In pertinent part, 5 U.S.C. § 706 reads:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or] ...
> (E) unsupported by substantial evidence in a case subject to §§ 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; ....
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

*may be warranted by unusual circumstances.*

(emphasis supplied). Second, as provided by 42 C.F.R. § 413.170(g)(1) (criteria for approval of exception requests):

> (g) HCFA may approve exceptions to an ESRD facility's prospective payment rate if the facility demonstrates with convincing objective evidence that its total per treatment costs are reasonable and allowable under [42 C.F.R.] § 413.174, and that its per treatment costs in excess of its payment rate are directly *attributable to any of the following criteria:*
>
> > *(1) Atypical service intensity (patient mix).* A substantial proportion of the facility's outpatient maintenance dialysis treatments involve atypicality intense dialysis services, special dialysis procedures or supplies that are medically necessary to meet special medical needs of the facility's patients. The facility is able to demonstrate clearly that these services, procedures or supplies and its per treatment costs are prudent and reasonable when compared to those of facilities with a similar patient mix....

(emphasis supplied). Third, and as further provided at 42 C.F.R. § 413.170(f)(5) and (6):

> (5) The facility is responsible for demonstrating to HCFA's satisfaction that the requirements of this section, including the criteria in ¶ (g) of this section, are met in full. That is, the burden of proof is on the facility to show that one or more of the criteria are met.... The burden of proof is not on HCFA to show that the criteria are not met, and that the facility's costs are not allowable.
>
> (6) .... [A] facility must submit to HCFA its most recently completed cost report ... and whatever statistics, data, and budgetary projections are determined by HCFA to be needed to determine if the exception is approvable.... The materials to HCFA must—
>
> > (i) Separately identify elements of cost contributing to costs per treatment in excess of the facility's payment rate;
> >
> > ....
> >
> > (iii) *Show that the elements of excessive cost are specifically attributable to one or more conditions specified* by the criteria set forth in ¶ (g) of this section.

(emphasis supplied).

### Overhead Costs

■ This court first finds that defendant acted within the bounds of 5 U.S.C. § 706 in rendering its decision to deny plaintiff's overhead cost exception request. As enunciated at 42 C.F.R. § 413.170(g)(1), plaintiff had the burden to demonstrate "with convincing objective evidence" that its per treatment overhead costs in excess of its payment rate were directly attributable to its atypical service intensity. Plaintiff was required to demonstrate that its per treatment overhead costs were "prudent and reasonable when compared to those facilities with a similar patient mix." 42 C.F.R. § 413.170(g)(1). Clearly stated at 42 C.F.R. § 413.170(f)(5), the burden of proof was on the plaintiff, and the plaintiff only, to show that the excess overhead costs were directly attributable to the atypical patient mix.

However, in making its overhead cost exception request with regard to the items in question—the medical director's time, laundry and linen costs, and social service costs—plaintiff has spoken in base generality. In making its overhead cost exception request, plaintiff stated the following:

> ... [T]he medical directors are required to spend more time in the unit supervising the dialysis operation. The sicker patient population requires more frequent review of staffing patterns, medications, and supplies, especially dialyzers and concentrates. The physicians are also actively involved in the development and monitoring of operational policies and budgets.
>
> ... [L]aundry and linen costs are higher because many of the "sicker" patients require blankets. Blankets are bulky and expensive to clean. Blankets must also be cleaned for each dialysis.
>
> ... [S]ocial service costs are higher because of the frequent contacts and intervention. This patient mix required more interaction with staff, patients, and families to insure the patients made it to and from their dialysis treatments and were com-

fortably accommodated while dialyzing in the maintenance dialysis unit.

(Doc. No. 5, Attachment at 677–78). At the PRRB hearing, plaintiff's side testified that, other than the statements, *supra*, "[t]here wasn't anything else that specifically documented these areas." (Doc. No. 5, Attachment at 328). Based on such non-specific and abstract statements, this court concludes that it was reasonable for HCFA to conclude that plaintiff failed to meet its burden of proof in demonstrating that the excess overhead costs were directly attributable to the atypical patient mix.[4] *See* 42 C.F.R. § 413.170(f)(6)(i) and (iii).[5]

*Nursing Fringe Benefit Costs*

█ This court further finds that the defendant was not acting *contra* to the standards of 5 U.S.C. § 706(2)(A) when HCFA decided to only partially grant plaintiff's fringe benefits increase to reflect the national, benefits-to-salary, average for fringe benefits. Having approved a $39.47 per treatment increase to nursing salaries, it was not an abuse of discretion for the defendant to subsequently compute plaintiff's fringe benefit increase, as premised on the percentage to which nursing benefits are directly reflective of nursing fringe salaries. By so tying the fringe benefits increase to the nursing salary increase, the defendant, contrary to plaintiff's contentions, effectively put into practice the notion that one's fringe benefits are part and parcel of the labor cost for caring for an atypical patient mix.

Defendant also was acting within the bounds of 5 U.S.C. § 706 when HCFA determined that plaintiff's request for a fringe benefit increase, above national, benefit-to-salary, average, was not directly attributable to the plaintiff's atypical patient mix. Testimony, presented by plaintiff's side at the

PRRB hearing, disclosed that retirement program and tuition remission costs were the chief reasons for the higher fringe benefit costs:

**BY MR. CASSIDY:**

Q. Mr. Dennis, HCFA has given the national average of 18.7 percent in terms of the benefit—in terms of the fringe benefit rate. Our rate is roughly 10 percent, or rather 10 points higher than that. My question to you is why are University Hospital's fringe benefit rate so much higher than the national average?

A. I think ours is so much higher because of, first of all, the retirement system that we have. Again, I'm not an expert on retirement systems, but it's my understanding, if you look at the cost of this, I mentioned it was 13.71 percent; however, it makes up a third of our fringe benefit package, and I suspect that's a great deal higher than at other hospitals. Also, the tuition remission is expensive, although in terms of total it only makes up 5 percent of the fringe benefit rate, but it is a cost that you would not incur at a non-teaching institution or an institution not affiliated with the university.

(Doc. No. 5, Attachment, at 225–26). Plaintiff in no way demonstrated or otherwise articulated that its atypical patient mix exacerbated its retirement or tuition costs. Therefore, this court finds that it was not arbitrary, capricious or otherwise violative of 5 U.S.C. § 706(2)(A) for the defendant to limit plaintiff's fringe benefits increase to the national, benefits-to-benefits, average.

█ Nonetheless, this court does find that defendant's automatic acceptance of 18.7 percent as the "appropriate national, bene-

---

4. Plaintiff contends that it sufficiently documented the attributability of such overhead costs to the atypicality of its patients, in light of the claimed non-availability of the exact cost components of the administrative and general costs built into the composite rate. (Doc. No. 13, at 5–6). This court fails to see how such "non-availability" of data would hinder the plaintiff in deriving its own precise figures on the attributability of medical director, linen/laundry and social service overhead costs to the atypicality of its patients. Furthermore, as explicitly proclaimed

at 42 C.F.R. § 413.170(f)(5), "[t]he burden of proof is not on HCFA to show that the criteria are not met, and that the facility's costs are not allowable." Rather, it is plaintiff's.

5. For, not only did plaintiff fail to statistically and computationally validate the existence of such overhead costs, but plaintiff, likewise, failed to statistically link the excess overhead to its atypical patient mix.

fits-to-salary, average" was arbitrary and capricious and, therefore, violative of 5 U.S.C. § 706. The record reveals that data used to configure the fringe benefits rate was collected as far back as 1979. (Doc. No. 5, Attachment at 3, 238–39 and 240). In view of the passage of more than 10 years, there is a question whether the 18.7 ratio is anymore valid than if HCFA were to pick a number out of a hat.[6] This is especially the case with regard to fringe benefits, which has seen a dramatic evolution as a labor cost over the years. Thomas J. Bergman, et al., How Important Are Employee Benefits to Public Sector Employees?, Public Personnel Management, Sept. 22, 1994, at 397 (growth of employee benefits as a labor cost has increased significantly over the past 60 years); Roger Thompson, Benefit Costs Surge Again, Feb. 1993, at 38 (overall benefit costs grew faster than wages in 1991). Simply put, it was arbitrary and capricious for HCFA to use and defendant to approve utilization of such a rate without any validating inquiry in the interim.[7] Such figure is, hereby, set aside. An evidentiary hearing will be held, at which time the parties may present evidence on this one issue.

### Conclusions of Law

1) This court has jurisdiction over this matter pursuant to statutory provisions described at 42 U.S.C. § 1395oo(f) and 28 U.S.C. § 1331.

2) HCFA has the authority, pursuant to statutory provisions described at 42 U.S.C. § 1395rr(b)(7) and regulatory provisions at 42 C.F.R. § 413.170(f) and (g), to grant ESRD composite rate exception requests to Medicare ESRD-providing facilities, such as plaintiff. Pursuant to these statutory and regulatory provisions:

a) The Secretary shall provide for such composite rate exceptions as may be warranted by unusual circumstances.

b) HCFA may approve exceptions if the facility in question demonstrates, with convincing objective evidence, that its per treatment costs in excess of its payment rate are directly attributable to a facility's atypical ESRD service intensity.

c) The facility is responsible for demonstrating to HCFA's satisfaction that the per treatment costs in excess of its composite rate are directly attributable to the facility's atypical patient mix. The burden of proof is not on HCFA.

3) In determining whether to approve ESRD composite rate exception requests, defendant is required to act pursuant to 5 U.S.C. § 706(2)(A) and (E), which requires this court to hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, otherwise no in accordance with the law or that is unsupported by substantial evidence.

4) Pursuant to conclusions of law in ¶¶ 2 and 3, this court finds that defendant did not act *contra* to 5 U.S.C. § 706 in denying plaintiff's overhead cost exception request for the medical director's time, laundry and linen costs, and social service costs.

5) Pursuant to conclusions of law in ¶¶ 2 and 3, this court finds that defendant did not act in violation of 5 U.S.C. § 706 in basing plaintiff's nursing fringe benefits increase on the national, benefits-to-salary, average.

6) Pursuant to conclusions of law in ¶¶ 2 and 3, this court finds that defendant did act arbitrarily and capriciously, and, thus, not in accordance with 5 U.S.C. § 706, in adopting 18.7 percent as the appropriate national, ESRD nursing benefits-to-salary, average.

6. Defendant makes a suggestive attempt to justify the validity of the 18.7 fringe benefits rate based on the fact that it is one component of the composite rate, which defendant asserts Congress ordered frozen in 1986. (Doc. No. 11). While Congress might have frozen the bottom-line composite rate number, it did not disturb HCFA's obligation to make composite rate exceptions, as described by 42 U.S.C. § 1395rr(b)(7), in accordance with 5 U.S.C. § 706. That is, Congress may have ordered HCFA to uniformly apply a certain composite rate, even though the components of such composite rate might now be out-of-line with reality, but that does not give HCFA the right to justify using out-of-line-with-reality component numbers to make exception determinations.

7. And, put another way, unlike a fine wine, the validity of statistical data does not age very well over time.

7) In accordance with conclusions of law in ¶¶ 2 through 4, this court dismisses plaintiff's claim as to the overhead costs issue.

8) In accordance with conclusions of law in ¶¶ 2, 3 and 5, this court dismisses plaintiff's claim that its ESRD nursing fringe benefits should have been above the national, benefits-to-salary average.

9) Pursuant to the foregoing, the court will determine, after a hearing, an appropriate base for fringe benefit increases.

IT IS SO ORDERED.